**Tyrone Blackburn, ESQ**
**Attorney NJS-ID # 232602020**
**1242 East 80th Street, 3rd Floor**
**Brooklyn, NY 11236**
**(347) 342-7432**
*Counsel for Plaintiffs'*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERIC HILDEBRANDT,<br>PAUL CHRISTIAN BURK,<br>LAINA DUTTON,<br>LAWRENCE LAMAINA,<br>SAMANTHA LIBBY,<br>EFTHIMIOS MARIAKAKIS,<br>MICHAEL MCDONOUGH,<br>LINDSEY FORBUS,<br>EDWARD DIX,<br>PETER FRANZONE,<br>JOHN BERRY,<br>RYAN MILLER,<br>HANK SWANK,<br>JOHN FERRAZZA,<br>CHARLES TAYLOR,<br>AJ HOLDERMAN, and<br>*A class of similarly situated individuals*<br><br>       Plaintiffs,<br><br>  -against-<br><br>SIPARADIGM LLC,<br>HEALTH LYNKS, LLC.,<br>MOHAMMED KHAN,<br>AZIZ SAAD,<br>JOHN and JANE DOES 1-10,<br>and ABC CORPS. 1-10<br><br>      Defendants | DOCKET NO.23-21835<br><br>**FLSA COLLECTIVE ACTION AND**<br>**RULE 23 CLASS ACTION**<br><br><br>**JURY DEMAND** |

Plaintiffs Eric Hilderbrandt ("Mr. Hilderbrandt"), Paul Christian Burk ("Mr. Burk"), Laina Dutton ("Ms. Dutton"), Lawrence LaMaina ("Mr. LaMaina"), Samantha Libby ("Ms. Libby"), Efthimios Mariakakis ("Mr. Mariakakis"), Michael McDonough ("Mr. McDonough"), Lindsey Forbus ("Ms.

Forbus"), Edward Dix ("Mr. Dix"), Peter Franzone ("Mr. Franzone"), John Berry ("Mr. Berry"), Ryan Miller ("Mr. Miller"), Hank Swank ("Mr. Swank"), John Ferrazza ("Mr. Ferrazza") Charles Taylor ("Mr. Taylor"), and AJ Holderman ("Mr. Holderman"), collectively, ("the Collective"), individually and on behalf of all others similarly situated, brings this Collective Action and Class Action Complaint by way of this Complaint against Defendants, siParadigm Diagnostics Informatics ("siP" or "Defendant Corporation"), and Aziz Saad ("Saad" or "Defendant Saad"), Mohammed Khan ("Khan" or "Defendant Khan") and JOHN and JANE DOES 1-10, and ABC CORPS. 1-10, hereby alleges and says:

## INTRODUCTION

1. Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated seeking recovery against Defendants for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. ("FLSA"), the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.1, *et seq*., the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, *et seq.*, Violation of Sales Representatives' Rights Act, N.J.S.A.2A:61A-1, et seq.; and breach of contract.

## JURISDICTION AND VENUE

2. The venue is properly set in this District because Defendants conduct business there.

3. This Court has personal jurisdiction over Defendants according to and consistent with the Constitutional requirements of Due Process in that Defendants, acting directly or through their agents or apparent agents, committed one or more of the following:

   i. The transaction of any business within the state;

   ii. The making of any contract within the state;

   iii. The commission of a tortious act within this state; and

   iv. The ownership, use, or possession of any real estate in this state.

4. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §§ 1331 and 29 U.S.C. § 216(b).

5. This Court has subject matter jurisdiction over Plaintiffs' claims under the NJWPL, NJWHL, and the Sales Representatives' Rights Act, N.J.S.A.2A:61A-1, et seq., and breach of contract claims pursuant to 28 U.S.C. §§ 1332 and 1367.

6. Requiring Defendants to litigate these claims in this District does not offend traditional notions of fair play and substantial justice. Plaintiffs' claims arise from conduct occurring by Defendants in the state of New Jersey.

7. The amount in controversy exceeds $75,000.00.

## NATURE OF ACTION:

8. This is an action for monetary and declaratory relief to redress the Defendants' violations of the Plaintiffs' employment rights. Plaintiffs seek relief for breach of contract, violation of New Jersey's Sales Representatives' Rights Act, and wage theft.

## PARTIES

9. _Mr. McDonough_: Mr. McDonough is a Caucasian man with a bachelor's degree in science in geography from The State University of New York at Buffalo. Mr. McDonough was employed at Defendant Corporation as a Business Development Executive. Mr. McDonough has eighteen years of business development sales expertise, previously Territory Manager at Johnson & Johnson. Mr. McDonough was more than qualified for his position with Defendant corporation.

10. _Mr. Holderman_: Mr. Holderman is a Caucasian man. Mr. Holderman was employed at Defendant Corporation as a Hereditary Cancer Specialist, Oncology and has over ten years of experience in this position. Mr. Holderman was more than qualified for his position with Defendant corporation.

11. _Mr. Mariakakis_: Mr. Mariakakis is a Caucasian man. Mr. Mariakakis was employed at Defendant Corporation as a sales executive. Mr. Mariakakis has over ten years of sales executive experience. Mr. Mariakakis was more than qualified for his position with Defendant corporation.

12. _Ms. Libby_: Ms. Libby is a Caucasian woman with eight years of medical sales expertise and over fifteen years of B2B sales and marketing experience. Ms. Libby was employed at Defendant Corporation as a Business Development Executive. Ms. Libby resides in Charlotte, NC. Ms. Libby resides at 4305 Back Creek Church Road. Ms. Libby was more than qualified for her position with Defendant corporation.

13. _Mr. LaMaina_: Mr. LaMaina is a Caucasian man. Mr. LaMaina was employed at Defendant Corporation as a territory sales manager and has over ten years of territory sales experience. Mr. LaMaina was more than qualified for his position with Defendant corporation.

14. _Ms. Dutton_: Ms. Dutton is a 51-year-old Caucasian woman. Ms. Dutton was employed at Defendant Corporation as a knowledgeable territory sales manager and has over ten years of

experience in the position of a molecular oncology specialist. Ms. Dutton was more than qualified for her position with the Defendant corporation.

15. *Mr. Taylor*: Mr. Taylor is an African-American man. Mr. Taylor was employed at Defendant Corporation as an Oncology Sales Specialist. Mr. Taylor has over ten years of oncology sales specialist experience. Mr. Taylor was more than qualified for his position with the Defendant corporation.

16. *Ms. Forbus*: Ms. Forbus is a Caucasian woman. Ms. Forbus was employed at Defendant Corporation as an oncology sales manager. Ms. Forbus has over ten years of oncology sales management experience. Ms. Forbus was more than qualified for her position with Defendant Corporation.

17. *Mr. Swank*: Mr. Swank is a Caucasian man. Mr. Swank was employed at Defendant Corporation as a Business Development Executive. Mr. Swank has over ten years of experience. Mr. Swank was more than qualified for his position with the Defendant corporation.

18. *Mr. Miller*: Mr. Miller is a Caucasian man. Mr. Miller was employed at Defendant Corporation as a Business Development Sales executive and has over ten years of experience in the position. Mr. Miller was more than qualified for his position with the Defendant corporation.

19. *Mr. Franzone*: Mr. Franzone is a Caucasian man. Mr. Franzone was employed at Defendant Corporation as a business developer. Mr. Franzone has over ten years of business development experience. Mr. Franzone was more than qualified for his position with the Defendant corporation.

20. *Mr. Burk*: Mr. Burk is a Caucasian man with a bachelor's degree in public policy and management from Indiana University Bloomington, IN. Mr. Burk was employed at Defendant Corporation as a Region Account Manager. Mr. Burk has twenty-seven years of account/managerial expertise, previously Director level Caris Life Sciences. Mr. Burk resides in Chicago, IL. Mr. Burk resides at 1640 W Byron St. Mr. Burk was more than qualified for his position with the Defendant corporation.

21. *Mr. Hildebrandt*: Mr. Hildebrandt is a Caucasian man. Mr. Hildebrandt was employed at Defendant Corporation as a regional account sales manager. Mr. Hildebrandt has over ten years of experience. Mr. Hildebrandt was more than qualified for his position with the Defendant corporation.

22. <u>*Mr. Dix*</u>: Mr. Dix is a Caucasian man. Mr. Dix was employed at Defendant Corporation as an Oncology Sales Specialist and has over ten years of experience in the position. Mr. Dix was more than qualified for his position with the Defendant corporation.

23. <u>*Mr. Berry*</u>: Mr. Berry is a Caucasian man. Mr. Berry was employed at Defendant Corporation as a Precision Oncology Specialist. Mr. Berry has over ten years of precision oncology sales experience. Mr. Berry was more than qualified for his position with Defendant corporation.

24. Health Lynks, LLC is a currently active shell organization formed in Wyoming by Defendants. According to the Wyoming Secretary of State, Health Lynks, LLC initial filing date was December 12, 2019. Health Lynks, LLC's registered agent is Cloud Peak Law Group, P.C. located at 1095 Sugar View Dr. Ste 100, Sheridan, WY 82801. Health Lynks, LLC has a principal address located at 1309 Coffeen Avenue, Ste 1200 Sheridan, WY 82801.



**Defendant Mohammed Khan**

25. Defendant Mohammad Khan is the CEO of Defendant siParadigm. Defendant Khan resides in Clarksville, Maryland. Defendant Khan aided, abetted, instructed, and authorized the harm visited upon Plaintiffs as detailed herein.



**Defendant Aziz Saad**

26. Defendant Aziz Saad is a senior officer of Defendant siParadigm. Defendant Aziz aided, abetted, instructed, and authorized the harm visited upon Plaintiffs as detailed herein.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27. Plaintiffs bring the First and Second Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all persons who worked for Defendant Corporation as sales managers and/or sales specialists, on or after the date that is three years before the filing of the Complaint in this case ("FLSA Collective Plaintiffs").

28. At all relevant times, Plaintiffs and member of the collective class are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decisions, policy, common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay them at the legally required minimum wage for all hours worked, and at least one and one half times their regular rate of pay in excess of forty (40) hours per workweek. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

29. The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA (29 U.S.C. § 216(b)). The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

30. At all relevant times, Defendant Corporation has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendant Corporation have employed, "employee[s]," including Plaintiffs and each of the FLSA Collective Plaintiffs.

## RULE 23 CLASS ALLEGATIONS – NJWPL

31. Plaintiffs bring this class action on their own behalf and on behalf of all similarly situated individuals (the "Class"), under the provisions of Rule 23(a) and 23(b)(3) who:

**Worked for Defendant Corporation as sales managers and or sales specialist and had their employment contracts breached by defendants, who had their commission payments withheld or reduced by defendants, and or had their commission structure changed by defendants without being paid consideration, and who was retaliated against by defendants in violation of the FLSA, NJWPL, NJWHL, and the Violation of Sales Representatives' Rights Act**.

Excluded from this above Class are: (1) Defendant, including its officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns; (2) any entity in which Defendants has a controlling interest, its officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns; (3) judicial and governmental entities including any judge, justice, or judicial officer presiding over this matter and members of their staff and immediate families; and (4) any person or company, which has negotiated and entered into employment agreements with Defendant that failed to adhere to the terms and conditions agreed to within the employment agreements.

32. Plaintiffs reserve the right to amend the above Class definition if further investigation indicates that the Class definition should be expanded, narrowed, subdivided, or otherwise modified.

33. Plaintiffs bring the Third Claim for Relief under NJWPL pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all persons employed by Defendant Corporation as salespersons in the State of New Jersey on or after the date that is six (6) years before the filing of the Complaint in this case (the "NJWPL Class Period").

34. All said persons, including Plaintiffs, are referred to herein as the "NJWPL Class." The NJWPL Class members are readily ascertainable. The number and identity of the NJWPL Class members are determinable from the records of the Defendant Corporation. The positions held, and wages earned for each NJWPL Class member are also determinable from the Defendant Corporation's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant Corporation. Notice can be provided by means permissible under F.R.C.P. 23.

35. The proposed NJWPL Class is so numerous that the joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of

that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the NJWPL Class.

36. Plaintiffs' claims are typical of those claims which could be alleged by any member of the NJWPL Class, and the relief sought is typical of the relief which would be sought by each member of the NJWPL Class in separate actions. All the NJWPL Class members were subject to the same corporate practices of Defendant Corporation, as alleged herein, of failing to timely make earned commission payments, breaching the collective's employment contracts, making illegal pay deductions and not reimbursing business expenses. Defendant Corporation corporate-wide policies and practices affected all NJWPL Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each NJWPL Class member. Plaintiffs and other NJWPL Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

37. Plaintiffs are able to fairly and adequately protect the interests of the NJWPL Class and has no interests antagonistic to the NJWPL Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

38. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual NJWPL Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual NJWPL Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant

saving of these costs. The prosecution of separate actions by individual members of the NJWPL Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the NJWPL Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

39. Upon information and belief, Defendants and other employers throughout the state violate the New Jersey Wage Payment Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

40. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual class members, including:

    a. Whether Defendant was the employer of Plaintiff and the Class members within the meaning of the New Jersey Wage Payment Law;

    b. Whether Plaintiff and the Class members were employees of Defendant within the meaning of the New Jersey Wage Payment Law;

    c. What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the compensation of Class members;

    d. Whether Defendant made unlawful deductions from Class members' paychecks in violation of the New Jersey Wage Payment Law; and

    e. Whether Plaintiff and other members of the Class are entitled to damages, and if so, the means of measuring such damages.

## RULE 23 CLASS ALLEGATIONS – NJWHL

41. Plaintiffs bring the Fourth and Fifth Claims for Relief under NJWHL pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all persons employed by Defendant as salesmen in the State of New Jersey on or after the date that is two years before the filing of the Complaint in this case (the "NJWHL Class Period").

42. All said persons, including Plaintiffs, are referred to herein as the "NJWHL Class." The NJWHL Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendant. The positions held and wages earned for each NJWHL Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant Corporation. Notice can be provided by means permissible under F.R.C.P. 23.

43. The proposed NJWHL Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendant Corporation, upon information and belief, there are more than forty (40) members of the NJWHL Class.

44. Plaintiffs' claims are typical of those claims which could be alleged by any member of the NJWHL Class, and the relief sought is typical of the relief which would be sought by each member of the NJWHL Class in separate actions. All the NJWHL Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay legally required minimum wage for all hours worked and at least one-and-one-half times their regular rate for work in excess of forty (40) hours per workweek. Defendants' corporate-wide policies and practices affected all NJWHL Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each NJWHL Class member. Plaintiffs and other NJWHL Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

45. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the NJWHL Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

46. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual NJWHL Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual NJWHL Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the NJWHL Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the NJWHL Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

47. Upon information and belief, Defendants and other employers throughout the state violate the New Jersey Wage and Hour Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

48. There are questions of law and fact common to the NJWHL Class which predominate over any questions affecting only individual class members, including:

   a. Whether Defendant was the employer of Plaintiff and the NJWHL Class members within the meaning of the New Jersey Wage and Hour Law;

   b. Whether Plaintiff and the NJWHL Class members were employees of Defendant within the meaning of the New Jersey Wage and Hour Law;

   c. What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the compensation of NJWHL Class members;

   d. Whether Defendant unlawfully failed to properly compensate Class members

minimum wage for all hours worked in violation of the New Jersey Wage and Hour Law; and

e. Whether Defendants unlawfully failed to properly compensate Class members at least one-and-one-half times their regular rates for work in excess of forty (40) hours per workweek in violation of the New Jersey Wage and Hour Law.

## **FACTUAL BACKGROUND**

49. Defendants committed the following acts knowingly, intentionally, and willfully.

**WAGE AND HOUR VIOLATIONS**:

50. Defendants employed Plaintiffs and the other FLSA Collective Plaintiffs, NJWPL Class members, and NJWHL Class members as sales managers and or sales specialists to secure laboratory orders from prospective health care professionals, such as doctors, hospitals, pharmacies, and health networks. These orders would then be fulfilled by the Defendants' laboratory located in New Jersey, other states within the United States, as well as overseas.

51. Plaintiffs' and the other FLSA Collective Plaintiffs and NJWHL Class members regularly spend more than eight hours per day traveling to clients and prospective clients securing laboratory contracts for Defendants' laboratories.

52. Plaintiff and the other FLSA Collective Plaintiffs and NJWHL Class members were compensated at the same hourly rate for all hours worked, regardless of the number of hours worked.

53. Defendants did not record the number of hours spent by Plaintiffs' and the other FLSA Collective Plaintiffs and NJWHL Class members traveling to locations and performing sales services on behalf of Defendants.

54. Defendants did not accurately record the number of hours worked by Plaintiffs' and the other FLSA Collective Plaintiffs and the NJWHL Class members.

55. For Plaintiffs' and the other FLSA Collective Plaintiffs and the NJWHL Class members, Defendants submitted no more than forty (40) hours per week to a payroll service, even if the employee worked more than forty (40).

56. Defendants did not compensate Plaintiffs' and the other FLSA Collective Plaintiffs and the NJWHL Class member any overtime for hours worked in excess of forty (40) per week.

57. Upon information and belief, Defendants provided Plaintiffs with a commission payment structure that required Plaintiffs to secure a certain number of laboratory specimen orders per

month. Every subsequent month Plaintiffs were required to secure the benchmark set from the prior month, plus 100%. For example, if Plaintiffs' benchmark was 3 specimens for the month of September, then they would be required to secure six specimens for the month of October, and nine specimens for the month of November, and so on and so forth.



**Defendant siParadigm**

58. According to their Linkedin page Defendant siParadigm,

"siParadigm has earned national accreditation from CLIA and CAP, as well as local licensing in several states. Our test menu achieves maximum coverage for potentially actionable aberrations such as: Single Nucleotide Variants (SNVs), Insertions & Deletions (InDels), Copy Number Variants (CNVs), Gene Fusions (RNA), Splice Variants (RNA), Somatic and germline Homologous Recombination Deficiency (HRD) and Loss of Heterogeneity (LOH) for Specific genomic signatures: Tumor Mutation Burden (TMB) and Microsatellite Instability (MSI). Our testing methodologies encompasses all major technologies for tissue-based and liquid biopsy testing of solid tumor and hematologic cancers as: IHC, Targeted or Broad-Panel DNA- and RNA-based, FISH, Cytogenetics, Flow Cytometry and Next Generation Sequencing (NGS). At siParadigm, our priority is accuracy, integrity, and quality for our clients. Our experienced team of professionals use advanced technology to provide prompt results to ensure accuracy. We also have a strong commitment to quality in order to guarantee the best results for you."

**Paul Christian Burk**

59. Upon information and belief, Mr. Burk was wrongfully terminated because he questioned Defendants' plans to cut salaries and change the commission schedule, disregarding the contract he signed with the Defendants.

60. Upon information and belief, Mr. Burk was terminated for raising concerns regarding the egregious HIPAA violations by Defendants.

61. According to Mr. Burks prior manager, BJ OSSO, Mr. Burk was terminated at the direction of Defendant Saad, due to Mr. Burks age.

62. The week before his termination, Mr. Burk was informed that he had been doing a "great job."

63. The only thing that changed was that Mr. Burk engaged in a protected activity.

64. In addition to violating Mr. Burk's protected rights, Defendants failed to fully compensate him as they are contractually obligated to do.

65. Mr. Burk is also a victim of the Defendants' decision to pay him significantly less than his female colleagues in violation of the NJLAD and the Federal Equal Pay Act.

66. Throughout the duration of his employment, Mr. Burk earned over $40,000.00 in unpaid commission.

Chris Burk's Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| $80,000.00 | $240,000.00 | $21,600.00 | $87,112.80 | **$348,712.80** |

## **Laina Dutton**

67. Ms. Dutton was wrongfully placed on a performance improvement plan on or about June 13, 2022, due to her engaging in a protected activity.

68. Ms. Dutton called the Defendants out on their fraudulent practices, and she raised concerns over the Defendants' misrepresentations of her job requirements, the Defendants' failure to define expectations when asked, and the Defendants' apparent breach of contract by reducing Ms. Dutton's compensation.

69. Upon information and belief, Ms. Dutton raised concerns regarding the Defendants' violation of patients' HIPAA rights.

70. Upon information and belief, Defendants terminated Ms. Dutton because she questioned why she was compensated significantly less than her male colleagues.

71. Ms. Dutton also raised concerns over Defendants blatant breach of contract resulting in over $85,000.00 in unpaid commissions.

Laina Dutton's Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| | | | | |

| $85,000.00 | $255,000.00 | $22,950.00 | $92,557.35 | **$370,507.35** |
|---|---|---|---|---|

## Lawrence LaMaina

72. Mr. LaMaina is a forty-six-year-old male with extensive experience as a Territory Sales Manager.

73. Mr. LaMaina has over twenty years of sales experience.

74. He was wrongfully terminated on or about 05/24/2022 due to his engagement in a protected activity when he raised concerns about race and age discrimination.

75. Shortly after, Mr. LaMaina complained his position was posted.

76. Within days of posting his position, Defendants terminated Mr. LaMaina.

77. Upon information and belief, Mr. LaMaina was replaced by someone several years his junior who did not possess a scintilla of his 22 years of sales experience.

78. Upon information and belief, Mr. LaMaina was terminated for concerns regarding the Defendants' violation of patients' HIPAA rights.

79. In addition to violating Mr. LaMaina's protected rights, Defendants failed to fully compensate him as they were contractually obligated to do.

80. Mr. LaMaina also raised concerns over Defendants blatant breach of contract resulting in over $40,000.00 in unpaid commissions.

Lawrence LaMaina Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| $40,000.00 | $120,000.00 | $10,800.00 | $43,556.40 | **$174,356.40** |

## Samantha Libby

81. Ms. Libby is a 45-year-old Caucasian female with extensive experience as a BDE Sales Specialist.

82. Ms. Libby was wrongfully placed on a performance improvement plan on or about October 20, 2021, as retaliation due to her engaging in a protected activity.

83. Ms. Libby was a whistleblower who requested NJLAD, ADA, and FMLA-protected medical leave.

84. She needed a medical procedure and was punished after she provided a medical request for leave.

85. In addition to violating Ms. Libby's ADA and FMLA-protected rights, Defendant harassed her, fraudulently misrepresented her role before hire, and failed to fully compensate her as they are contractually obligated to do.

86. Upon return from protected medical leave, Ms. Libby's business accounts were removed from her book and given to her temp replacement, who had no prior work experience and is 23 years her minor. She was again put on an unachievable performance improvement plan and wrongfully terminated in an act of retaliation for her role as a whistleblower.

87. Ms. Libby also raised concerns over Defendants blatant breach of contract resulting in over $85,000.00 in unpaid commissions.

Samantha Libby Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| $85,000.00 | $255,000.00 | $22,950.00 | $92,557.35 | **$370,507.35** |

## **Efthimios Mariakakis**

88. Mr. Mariakakis is a Caucasian male with extensive experience as a Sales Executive.

89. Mr. Mariakakis was wrongfully terminated after filing internal complaints concerning the disturbing patterns and practices of the Defendants.

90. Upon information and belief, Mr. Mariakakis was retaliated against for raising concerns regarding the egregious HIPAA violations by Defendants.

91. In addition to his internal complaints, Defendants reneged on their contractual obligation to pay Mr. Mariakakis his commission and his regular pay.

92. Mr. Mariakakis also raised concerns over the Defendants blatant breach of contract, resulting in over $30,000.00 in unpaid commissions.

Efthimios Mariakakis Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| $30,000.00 | $90,000.00 | $8,100.00 | $32,667.30 | **$130,767.30** |

## **Michael McDonough**

93. Mr. McDonough is a forty-two-year-old male with extensive experience as a Business Development Manager.

94. Mr. McDonough was wrongfully terminated due to his age and was replaced by someone significantly young and less experienced.

95. Upon information and belief, Mr. McDonough was retaliated against for raising concerns regarding the Defendants' violation of patients' HIPAA rights.

96. In addition to this blatant act of age discrimination, Defendants reneged on their contractual obligation to pay Mr. McDonough his quarterly commission.

97. Mr. McDonough also raised concerns over Defendants blatant breach of contract resulting in over $15,000.00 in unpaid commissions.

Michael McDonough Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| $15,000.00 | $45,000.00 | $4,050.00 | $16,333.65 | **$65,236.50** |

## **Lindsey Forbus**

98. Ms. Forbus is a female with extensive industry experience.

99. Ms. Forbus requested ADA and FMLA-protected medical leave to recover from a medical condition.

100. She was harassed and targeted and retaliated against for taking medical leave.

101. In addition to violating Ms. Forbus's ADA and FMLA-protected rights, Defendants harassed her, misrepresented her role, and failed to fully compensate her as they are contractually obligated to do.

102. Upon information and belief, Ms. Forbus was terminated for raising concerns regarding the Defendants' violation of patients' HIPAA rights.

103. Ms. Forbus also raised concerns over the Defendants blatant breach of contract, resulting in over $60,000.00 in unpaid commissions.

Lindsey Forbus Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| $60,000.00 | $180,000.00 | $16,200.00 | $65,334.60 | **$261,534.60** |

## **Edward Dix**

104. Mr. Dix has extensive experience working as an Oncology Sales Specialist.

105. Mr. Dix questioned the Defendants' failure to pay Mr. Dix's earned salary.

106.    Upon information and belief, Mr. Dix raised concerns regarding the Defendants' violation of patients' HIPAA rights.

107.    Mr. Dix also raised concern over the Defendants' decision to renege on their contractual obligation to pay him his $80k commission and an additional $1,500 per month.

108.    After raising these concerns, Defendants retaliated against Mr. Dix.

109.    In addition to their blatant acts of retaliation, the Defendants engaged in acts of wage discrimination.

110.    Mr. Dix also raised concerns over the Defendants blatant breach of contract, resulting in over $70,000.00 in unpaid commissions.

Edward Dix Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | Unpaid Bridge Commission | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|---|
| $70,000.00 | $26,664.00 | $289,992.00 | $26,099.28 | $105,258.40 | **$421,349.68** |

## **Peter Franzone**

111.    Mr. Franzone has extensive experience working as a Business Development and Molecular Oncology Management representative.

112.    Mr. Franzone has over thirty-five years of experience and was wrongfully terminated on or about 6/2/2022.

113.    Mr. Franzone was replaced by individuals twenty years his junior with less experience who was compensated at least $20,000 a year more than him.

114.    Upon information and belief, Mr. Franzone was retaliated against for raising concerns regarding the Defendants' violation of patients' HIPAA rights.

115.    In addition to violating Mr. Franzone's protected rights, Defendants failed to fully compensate him as they were contractually obligated to do.

116.    Mr. Franzone also raised concerns over the Defendants blatant breach of contract, resulting in over $35,000.00 in unpaid commissions.

Peter Franzone Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 1.33 | Total |
|---|---|---|---|---|
| $35,000.00 | $105,000.00 | $9,450.00 | $38,111.85 | **$152,561.85** |

**John Berry**

117.    Mr. Berry has extensive experience working as a Precision Oncology Specialist.

118.    Mr. Berry has over 14 years of experience.

119.    Mr. Berry was a victim of the Defendants' pattern and practice of wage discrimination.

120.    Upon information and belief, Mr. Berry was retaliated against for raising concerns over the HIPAA violations Defendants' organization committed and failed to report to the impacted individuals.

121.    In addition to their blatant acts of discrimination, Defendants failed to fully compensate Mr. Berry as they were contractually obligated to do. Mr. Berry was also wrongfully terminated.

122.    Mr. Berry also raised concerns over Defendants blatant breach of contract resulting in over $40,000.00 in unpaid commissions.

John Berry Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| $40,000.00 | $120,000.00 | $10,800.00 | $43,556.40 | **$174,356.40** |

**Ryan Miller**

123.    Mr. Miller has over fifteen years of experience as a Business Development sales executive.

124.    Mr. Miller was terminated without cause.

125.    Defendants failed to fully compensate Mr. Miller as they are contractually obligated to do.

126.    Upon information and belief, Mr. Miller was retaliated against for raising concerns over the HIPAA violations the Defendant organization committed and failed to report to the impacted individuals.

127.    Mr. Miller also raised concerns over the Defendants blatant breach of contract, resulting in over $35,000.00 in unpaid commissions.

Ryan Miller Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| $35,000.00 | $105,000.00 | $9,450.00 | $38,111.85 | **$152,561.85** |

**Hank Swank**

128.    Mr. Swank has extensive experience working as a Business Development Executive.

129. At one point, Mr. Swank was the representative of the month and exhibited an outstanding performance within the Defendants' organization.

130. After being wrongfully accused of spreading rumors by Defendant Saad, Mr. Swank was placed on a performance improvement plan.

131. According to Mr. Swank's manager, the performance improvement plan was a pretext used by Defendant Saad to terminate Mr. Swank.

132. Upon information and belief, Mr. Swank was retaliated against for raising concerns over the HIPAA violations Defendant organization committed and failed to report to the impacted individuals.

133. In addition to violating Mr. Swank's protected rights, Defendants failed to fully compensate him as they are contractually obligated to do.

134. Mr. Swank also raised concerns over Defendants blatant breach of contract resulting in over $51,000.00 in unpaid commissions.

Hank Swank Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| $51,000.00 | $153,000.00 | $13,770.00 | $55,534.41 | **$222,304.41** |

## John Ferrazza

135. Mr. Ferrazza was employed by the defendants from April 14, 2021, to December 15, 2021.

136. He was employed as the Director of Sales and Strategic Accounts.

137. Defendants had no grounds for termination, they kept Mr. Ferrazza entire team while getting rid of 80% of the rest of the sales force.

138. They hired Chris Weidman, to replace Mr. Ferrazza before he was ever let go.

139. They terminated Mr. Ferrazza in December to get out of paying him his contracted Q4 commission. Mr. Ferrazza was due $33,000.00 plus salary and benefits.

140. Upon information and belief, Mr. Ferrazza was retaliated against for raising concerns over the HIPAA violations Defendant organization committed and failed to report to the impacted individuals.

141. Mr. Ferrazza lost over 6 months' salary and 3 earned commissions.

142. Mr. Ferrazza also raised concerns over Defendants blatant breach of contract resulting in over $20,000.00 in unpaid commissions.

John Ferrazza Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| $20,000.00 | $60,000.00 | $5,400.00 | $21,778.20 | **$87,178.20** |

## **Charles Taylor**

143.    Mr. Taylor is a fifty-seven-year-old male with extensive experience as an Oncology Sales Specialist.

144.    Mr. Taylor has over twenty years of sales experience and was constructively discharged on or about 09/13/2022.

145.    Mr. Taylor requested medical leave for a day and was denied by Defendant Saad.

146.    Mr. Taylor was also required to secure new accounts, and then Defendants would confiscate those accounts and turn them over to younger representatives.

147.    Upon information and belief, Mr. Taylor was retaliated against for raising concerns over the HIPAA violations Defendant organization committed and failed to report to the impacted individuals.

148.    In addition to violating Mr. Taylor's protected disability rights, Defendant failed to fully compensate him as they were contractually obligated to do.

149.    Mr. Taylor also raised concerns over Defendants blatant breach of contract resulting in over $55,000.00 in unpaid commissions.

Charles Taylor Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 33.3% | Total |
|---|---|---|---|---|
| $55,000.00 | $165,000.00 | $14,850.00 | $59,890.05 | **$239,740.05** |

## **AJ Holderman**

150.    Mr. Holderman is a Hereditary Cancer Specialist, Oncology.

151.    Mr. Holderman was an account manager for defendant corporation.

152.    Mr. Holderman was harmed by Defendants' when they breached his contract, reduced his base salary without consideration, and reneged and withheld his earned commissions.

153.    Mr. Holderman did not have any disciplinary issues with defendant organization, so much so, that he was promoted to Oncology account manager.

154.    Mr. Holderman is disabled, as that term is defined under the ADA. He suffered from paralysis of his left arm and hand.  On or about December 2022, Mr. Holderman informed the

defendants that he was disabled and required reasonable accommodations. Mr. Holdeman's accommodations request was denied.

155. In addition to violating Mr. Holderman's protected disability rights, Defendants failed to fully compensate him as they were contractually obligated to do.

156. Mr. Holderman also raised concerns over the Defendants' blatant breach of contract resulting in over $72,000.00 in unpaid commissions.

AJ Holderman Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 1.33 | Total |
|---|---|---|---|---|
| $72,000.00 | $216,000.00 | $19,440.00 | $78,401.52 | **$313,841.52** |

## **Eric Hildebrandt**

157. Mr. Hildebrandt is a Caucasian male with extensive experience working as a sales specialist.

158. Mr. Hildebrandt is grossly underpaid, earning a 1% commission on the top revenue accounts he brings in.

159. This commission structure is a clear breach of contract and represents an act of retaliation by Mr. Hildebrandt's managers due to Mr. Hildebrandt raising concerns about disparate treatment and pay discrimination.

160. Upon information and belief, Mr. Hildebrandt was retaliated against for raising concerns over the HIPAA violations Defendants' organization committed and failed to report to the impacted individuals.

161. In fact, Mr. Hildebrandt's managers have a pattern and practice of disparaging and defaming Mr. Hildebrandt's character and questioning his intelligence with his colleagues.

162. In addition to violating Mr. Hildebrandt's protected rights, Defendants failed to fully compensate him as they are contractually obligated to do.

Eric Hildebrandt Breach of Contract- Unpaid Commissions Damages Breakdown:

| Unpaid Commissions | NJ Penalties 3x Damages | 9% interest | Attorney's Fees 1.33 | Total |
|---|---|---|---|---|
| $355,000.00 | $1,065,000.00 | $95,850.00 | $386,563.00 | **$1,547,413.05** |

## FIRST CLAIM FOR RELIEF
### FLSA Minimum Wage Claim, 29 U.S.C. § 201, *et seq.*
### Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs

163. Plaintiffs on behalf of themselves and the FLSA Collective Plaintiffs, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

164. At all relevant times, Defendants have operated under common policies, plans and practices of willfully failing and refusing to pay Plaintiff and the other FLSA Collective Plaintiffs the Federal minimum wage for each hour worked and failing to keep records required by the FLSA.

165. At all relevant times, Defendants willfully, regularly, and repeatedly failed to pay Plaintiffs and the FLSA Collective Plaintiffs the Federal minimum wage for each hour worked.

166. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE,** the Plaintiffs demand judgment of restitution, indemnity, contribution, or apportionment of responsibility from the party or parties against whom this claim is asserted. Awarding compensatory damages; awarding punitive damages; awarding costs and fees of this action, including attorneys' fees to the extent permitted by law; awarding prejudgment interest to the extent permitted by law; and awarding such other and further relief as to this Court may seem proper.

## SECOND CLAIM FOR RELIEF
### FLSA Overtime Violations, 29 U.S.C. § 201, *et seq.*
### Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs

167. Plaintiffs on behalf of themselves and other FLSA Collective Plaintiffs, realleges and incorporates by reference all previous paragraphs.

168. Throughout the statute of limitations period covered by these claims, Plaintiffs and the other FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per workweek, and FLSA Collective Plaintiffs continue to do so.

169. At all relevant times, Defendants operated under common policies, plans and practices of willfully failing and refusing to pay Plaintiffs and the other FLSA Collective Plaintiffs at one-and-one-half times their regular rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA, even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

170.    At all relevant times, Defendants willfully, regularly, and repeatedly failed to pay Plaintiffs and the FLSA Collective Plaintiffs at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

171.    Plaintiffs on behalf of themselves and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE,** the Plaintiffs demand judgment of restitution, indemnity, contribution, or apportionment of responsibility from the party or parties against whom this claim is asserted. Awarding compensatory damages; awarding punitive damages; awarding costs and fees of this action, including attorneys' fees to the extent permitted by law; awarding prejudgment interest to the extent permitted by law; and awarding such other and further relief as to this Court may seem proper.

### THIRD CLAIM FOR RELIEF
**Illegal Pay Deductions, N.J.S.A. § 34:11-4.1, *et seq.***
**Brought by Plaintiffs on Behalf of Themselves and the NJWPL Class**

172.    Plaintiffs on behalf of themselves and the NJWPL Class members, realleges and incorporates by reference all previous paragraphs.

173.    Defendants willfully withheld and/or diverted a portion of NJWPL Class Members' wages by routinely taking improper deductions from the wages of Plaintiffs and the other Class members and by failing to reimburse Plaintiffs and other NJWPL Class Members for legitimate business expenses.

174.    By routinely taking improper deductions and failing to reimburse expenses for Plaintiffs and other NJWPL Class Members, Defendants violated N.J.S.A. 34:11-4.4.

175.    The NJWPL creates a private cause of action for employees to sue in court for wages claimed to be due. A claim for wages improperly withheld or diverted is a claim for non-payment of wages due for which there is a private cause of action under New Jersey statutory law.

176.    Plaintiffs on behalf of themselves and the NJWPL Class Members, seeks damages in the amount of all improper deductions and unreimbursed business expenses, as well as any and all available statutory and punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE,** the Plaintiffs demand judgment of restitution, indemnity, contribution, or apportionment of responsibility from the party or parties against whom this claim is asserted. Awarding compensatory damages; awarding punitive damages; awarding costs and fees of this action, including attorneys' fees to the extent permitted by law; awarding prejudgment interest to the extent permitted by law; and awarding such other and further relief as to this Court may seem proper.

## FOURTH CLAIM FOR RELIEF
### NJWHL Minimum Wage Claim, N.J.S.A. 34:11-56a, et seq.
### Brought by Plaintiffs on Behalf of Themselves and the NJWHL Class

177.    Plaintiffs on behalf of themselves and the NJWHL Class members, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

178.    At all relevant times, Defendants have operated under common policies, plans and practices of willfully failing and refusing to pay Plaintiffs and the other NJWHL Class members the State minimum wage for each hour worked.

179.    At all relevant times, Defendants willfully, regularly, and repeatedly failed to pay Plaintiffs and the NJWHL Class members the State minimum wage for each hour worked.

180.    Plaintiffs on behalf of themselves and the NJWHL Class Members, seeks damages in the amount of their respective unpaid compensation, as well as any and all available statutory and punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE,** the Plaintiffs demand judgment of restitution, indemnity, contribution, or apportionment of responsibility from the party or parties against whom this claim is asserted. Awarding compensatory damages; awarding punitive damages; awarding costs and fees of this action, including attorneys' fees to the extent permitted by law; awarding prejudgment interest to the extent permitted by law; and awarding such other and further relief as to this Court may seem proper.

## FIFTH CLAIM FOR RELIEF
### NJWHL Overtime Violations, N.J.S.A. 34:11-56a, *et seq.*
### Brought by Plaintiffs on Behalf of Themselves and the NJWHL Class

181.    Plaintiffs on behalf of themselves and other NJWHL Class members, realleges and incorporates by reference all previous paragraphs.

182.    Throughout the statute of limitations period covered by these claims, Plaintiffs and the other NJWHL Class members regularly worked in excess of forty (40) hours per workweek, and NJWHL Class members continue to do so.

183.    At all relevant times, Defendants operated under common policies, plans and practices of willfully failing and refusing to pay Plaintiffs and the other NJWHL Class members  at one-

and-one-half times their regular rate for work in excess of forty (40) hours per workweek, even though the NJWHL Class members have been and are entitled to overtime.

184. At all relevant times, Defendants willfully, regularly, and repeatedly failed to pay Plaintiffs and the NJWHL Class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

185. Plaintiffs on behalf of themselves and the NJWHL Class Members, seeks damages in the amount of their respective unpaid overtime compensation, as well as any and all available statutory and punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE,** the Plaintiffs demand judgment of restitution, indemnity, contribution, or apportionment of responsibility from the party or parties against whom this claim is asserted. Awarding compensatory damages; awarding punitive damages; awarding costs and fees of this action, including attorneys' fees to the extent permitted by law; awarding prejudgment interest to the extent permitted by law; and awarding such other and further relief as to this Court may seem proper.

### SIXTH CLAIM FOR RELIEF
### Improper Wage Deductions Under State Law

186. Plaintiffs on behalf of themselves and other NJWHL Class members, realleges and incorporates by reference all previous paragraphs.

187. N.J.S.A. 34:11-4.4 provides that: "[n]o employer may withhold or divert any portion of an employee's wages unless: (a) [t]he employer is required or empowered to do so by New Jersey or United States Law."

188. N.J.S.A. 34:11-4.4(b) contains subparts numbered (1) through (11) which identify the legitimate and lawful circumstances under which an employer may withhold or divert sums from their employees' wages.

189. None of the subparts identified in N.J.S.A. 34:11-4.4(b) apply to the claims asserted in this Complaint by the Plaintiffs.

190. Defendants systematically and unlawfully withheld Plaintiffs' wages, including, *inter alia*, commissions that were earned and owed to Plaintiffs.

191. Plaintiffs seek restitution of all unlawful wage deductions and withheld commissions earned by Plaintiffs.

192. The NJWHL creates a private cause of action for employees to sue in court for wages claimed to be due. A claim for wages improperly withheld or diverted is a claim for non-

payment of wages due for which there is a private cause of action under New Jersey statutory law.

**WHEREFORE,** the Plaintiffs demand judgment of restitution, indemnity, contribution, or apportionment of responsibility from the party or parties against whom this claim is asserted. Awarding compensatory damages; awarding punitive damages; awarding costs and fees of this action, including attorneys' fees to the extent permitted by law; awarding prejudgment interest to the extent permitted by law; and awarding such other and further relief as to this Court may seem proper.

<u>**SEVENTH CLAIM FOR RELIEF**</u>
**Breach Of Contract**

193. Plaintiffs repeat and reallege the allegations outlined in all previous paragraphs of this Complaint as if they were outlined in full herein.

194. To establish a breach of contract claim, our law imposes on a plaintiff the burden to prove four elements: first, that "[t]he parties entered into a contract containing certain terms"; second, that "plaintiff[s] did what the contract required [them] to do"; third, that "defendant[s] did not do what the contract required [them] to do[,]" defined as a "breach of the contract"; and fourth, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the Plaintiff [s]."v[*Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482, 139 A.3d 57 (2016) (alterations in original) (quoting *Model Jury Charges (Civil)* § 4.10A "The Contract Claim-Generally" (approved May 1998)).] <u>Carifi v. Barberio</u>, No. A-0597-17T1, 2020 N.J. Super. Unpub. LEXIS 2393, at *22 (Super. Ct. App. Div. December 14, 2020).

195. Plaintiffs were in contract with the defendant corporation to utilize their experience, knowledge, and networks to build the defendants business.

196. Plaintiffs fully executed their duties under the contract when they used their knowledge, networks, and reputations to bring business contracts and orders to the Defendants boosting the lab services the defendants provided.

197. In exchange for their services, the Plaintiffs were guaranteed a set salary and commissions for every contract and specimen lab order they procured for Defendants.

198. After initially being collegial and supportive, Defendants stripped Plaintiffs of their territories, networks, and resources, reassigned them to younger inexperienced employees, reduced Plaintiffs' salaries, refused to pay them their commissions, and ultimately terminated Plaintiffs.

199. Defendants' failure to execute their obligations fully and faithfully under the contract when they reneged on Plaintiffs' contractually guaranteed salary, reneged on Plaintiffs' contractually guaranteed commission structure, and stole Plaintiffs' network and business contracts.

200. As a result of the Defendants' negligence, the Plaintiffs have had their reputations damaged in the industry, lost employment opportunities in the industry, lost their commission, and were wrongfully terminated from the Defendant Corporation.

**WHEREFORE,** the Plaintiffs demand judgment of restitution, indemnity, contribution, or apportionment of responsibility from the party or parties against whom this claim is asserted. Awarding compensatory damages; awarding punitive damages; awarding costs and fees of this action, including attorneys' fees to the extent permitted by law; awarding prejudgment interest to the extent permitted by law; and awarding such other and further relief as to this Court may seem proper.

## EIGHTH CLAIM FOR RELIEF
### Retaliation In Violation of the FLSA

201. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

202. Throughout the duration of their employment, Plaintiffs raised complaints with Defendants concerning their failure to be properly compensated for their work, including unpaid commissions.

203. Defendants never investigated Plaintiffs' complaints or meaningfully addressed their concerns in any way.

204. In retaliation for their complaints, however, Defendants reduced Plaintiffs' work schedule, stripped them of their territory, reduced their pay, stole their earned commissions, and then summarily fired Plaintiffs.

205. Defendants summarily fired Plaintiffs shortly after Plaintiffs made a complaint about Defendants' violations of the FLSA.

206. Defendants' retaliatory firing of Plaintiffs following their complaints for violations of the FLSA are in direct violation of Plaintiffs' rights under 29 U.S.C. § 215(a)(3).

207. Plaintiffs engaged in the protected activity of complaining to their employer regarding issues of overtime and other owed compensation. A causal link exists between the protected activity and adverse employment action as Defendants knew of Plaintiffs' activities and complaints, and Defendants' retaliatory acts were a direct result of such complaints.

208. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable injuries and damages.

209. Plaintiffs seek relief as provided by 29 U.S.C. § 216(b), including, without limitation, backpay for lost wages, commissions, or diminishment, loss of other benefits, and any and all such legal or equitable relief as may be appropriate to effectuate for purposes of Section 215(a)(3), including but not limited to compensatory damages for mental anguish and emotional distress and other injuries incurred as a result of the retaliation.

210. As Defendants' retaliatory actions, including but not limited to the dismissal of Plaintiffs, were willful, malicious, and/or with conscious disregard of Plaintiffs' statutorily protected rights, Plaintiffs entitled to an award of punitive damages.

211. Plaintiffs also requests damages for such additional relief as justice may require, together with costs, attorney fees, pre-judgment interest, post-judgment interest, and other appropriate relief as the Court may grant in this action.

**WHEREFORE,** the Plaintiffs demand judgment of restitution, indemnity, contribution, or apportionment of responsibility from the party or parties against whom this claim is asserted. Awarding compensatory damages; awarding punitive damages; awarding costs and fees of this action, including attorneys' fees to the extent permitted by law; awarding prejudgment interest to the extent permitted by law; and awarding such other and further relief as to this Court may seem proper.

## <u>NINTH CLAIM FOR RELIEF</u>
### Retaliation in Violation of the NJWHL

212. Plaintiffs reallege and incorporates by reference all allegations in all preceding paragraphs.

213. Throughout the duration of their employment, Plaintiffs raised complaints with Defendants concerning their failure to be properly compensated for their work, including unpaid commissions.

214. Defendants never investigated Plaintiffs' complaints or meaningfully addressed their concerns in any way.

215. In retaliation to Plaintiffs' complaints, Defendants reduced Plaintiffs' work schedule.

216. Then, Defendants summarily fired Plaintiffs shortly after because Plaintiffs made a complaint about Defendants' violations of the NJWHL.

217. Defendants' retaliatory firing of Plaintiffs following their complaints for violations of the NJWHL is in direct violation of Plaintiffs' rights under NJWHL, N.J.S.A. 34:11–56a24.

218. Plaintiffs engaged in the protected activity of complaining to their employer regarding issues of overtime and other owed compensation. A causal link exists between the protected activity and adverse employment action as Defendants knew of Plaintiffs' activities and

complaints, and Defendants' retaliatory acts were a direct result of such complaints.

219.    As a direct and proximate result of Defendants conduct, Plaintiffs have suffered irreparable injuries and damages.

220.    Plaintiffs seek relief as provided by NJWHL, including, without limitation, backpay for lost wages, commissions, or diminishment, loss of other benefits, and any and all such legal or equitable relief as may be appropriate to effectuate for purposes of Section 215(a)(3), including but not limited to compensatory damages for mental anguish and emotional distress and other injuries incurred as a result of the retaliation.

221.    As Defendants' retaliatory actions, including but not limited to the dismissal of Plaintiffs, were willful, malicious, and/or with conscious disregard of Plaintiffs' statutorily protected rights, Plaintiff is entitled to an award of punitive damages.

222.    Plaintiffs also requests damages for such additional relief as justice may require, together with costs, attorney fees, pre-judgment interest, post-judgment interest, and other appropriate relief as the Court may grant in this action.

**WHEREFORE,** the Plaintiffs demand judgment of restitution, indemnity, contribution, or apportionment of responsibility from the party or parties against whom this claim is asserted. Awarding compensatory damages; awarding punitive damages; awarding costs and fees of this action, including attorneys' fees to the extent permitted by law; awarding prejudgment interest to the extent permitted by law; and awarding such other and further relief as to this Court may seem proper.

## <u>TENTH CLAIM FOR RELIEF</u>
### Fraud

223.    Plaintiffs repeat and reallege the allegations set forth in all previous paragraphs of this Complaint as if they were set forth in full herein.

224.    The elements of fraud in the inducement are a misrepresentation of material fact; knowledge or belief by the defendant of its falsity; intent that the other party relies on the misrepresentation; and reasonable reliance thereon by the other party. *Nolan v. Lee Ho*, 120 N.J. 465, 472, 577 A.2d 143 (1990). Fraud in the inducement does not differ materially from common-law fraud, as it provides a cognizable basis for equitable relief in the event a false promise induced reliance. *See Lipsit v. Leonard*, 64 N.J. 276, 283, 315 A.2d 25 (1974). *Longmuir v. Kickin' It*, No. A-0422-18T2, 2020 N.J. Super. Unpub. LEXIS 707, at *6 (Super. Ct. App. Div. April 21, 2020).

<u>Misrepresentation of Material Fact:</u>

225.   Here, as detailed above, Defendants presented Plaintiffs with employment contracts detailing compensation structures, commission structures, and terms of employment that Plaintiffs relied upon to their detriment.

226.   On multiple occasions throughout the duration of their employment, Defendants changed Plaintiffs' compensation structure by reducing the plaintiffs' compensation and stripping them of their earned commissions.

227.   Throughout the duration of their employment, Defendants changed the commission structure by consistently changing the metrics and standards that were required to be met to earn commissions.

228.   Throughout the duration of their employment, Plaintiffs were required to incorporate their network and years of experience into Defendants' organization with the guarantee that Plaintiffs would maintain and nurture those relationships.

229.   After the Plaintiffs complied, Plaintiffs were stripped of their territories, clients, and business portfolios and had them reassigned to younger, junior, less experienced individuals.

230.   An objectionably reasonable person in Plaintiffs' position would believe the compensation structure, commission structure, and terms of employment detailed in their employment agreement would be adhered to by their employer.

The Defendants Knew Their Representations to Plaintiffs in Plaintiffs' Employment Contracts Were False:

231.   Here, Defendants knew representations to Plaintiffs in Plaintiffs' employment agreements were false when they subsequently reneged on all aspects of Plaintiffs employment agreements.

232.   Defendants waited until Plaintiffs were fully immersed and invested in Defendants' business before Defendants stripped Plaintiffs of their compensation, commission, clients, territories, and networks.

233.   Throughout their employment, Defendants have misled Plaintiffs with regard to guaranteed compensation, guaranteed commissions, business profitability, and management of their business territories.

Plaintiffs Detrimentally Relied on Defendants Promise:

234.   Here, the Plaintiffs have all worked in the Defendants' industry for an average of ten years collectively.

235. The Plaintiffs have worked for a myriad of competitors and understand the basic patterns and practices of corporations that provided the same services as Defendants within the Defendants' industry.

236. Plaintiffs detrimentally relied upon Defendants to be honest and truthful in their representations to them. Defendants intentionally deceived Plaintiffs for the sole purpose of getting them to use their networks, years of experience, and reputations with their clients to build Defendants' business.

237. Defendants' actions violated industry standards.

Plaintiffs' Detrimental Reliance was Reasonable:

238. Here, as previously stated, Plaintiffs' detrimental reliance was reasonable because they worked in this industry on average for at least ten years and had no reason to believe that Defendants would deviate from industry employment standards by using them for their networks and resources and by reneging on their employment agreements by reducing their salaries and altering and refusing to pay the contracted earned commissions.

**WHEREFORE,** the Plaintiffs' demand judgment of restitution, indemnity, contribution, or apportionment of responsibility from the party or parties against whom this claim is asserted. Awarding compensatory damages; awarding punitive damages; awarding costs and fees of this action, including attorneys' fees to the extent permitted by law; awarding prejudgment interest to the extent permitted by law; and awarding such other and further relief as to this Court may seem proper.

## ELEVENTH CLAIM FOR RELIEF
### Breach of Implied Covenant of Good Faith & Fair Dealing

239. Plaintiffs repeat and incorporates the foregoing allegations as if set forth at length herein.

240. By its foregoing acts and omissions, Defendants breached the implied duty of good faith and fair dealing owed to Plaintiffs.

241. As a direct and proximate result of Defendants breach of such implied covenant, Plaintiffs have been and will continue to be damaged.

242. Such damages include, without limitation, earned but unpaid commission sums on the designated programs and projects for their duration, as well as damages resulting from the unrecouped investment that Defendants induced Plaintiffs to make in furtherance of the Defendants' business only to have their territories stripped, terminated their employment, unilaterally reduced their base pay, and changed, and withheld their earned commission standards.

**WHEREFORE,** the Plaintiffs' demand judgment of restitution, indemnity, contribution, or apportionment of responsibility from the party or parties against whom this claim is asserted. Awarding compensatory damages; awarding punitive damages; awarding costs and fees of this action, including attorneys' fees to the extent permitted by law; awarding prejudgment interest to the extent permitted by law; and awarding such other and further relief as to this Court may seem proper.

### TWELFTH CLAIM FOR RELIEF
### Violation of Sales Representatives' Rights Act, N.J.S.A.2A:61A-1, et seq.

243. Plaintiffs repeats and incorporates the foregoing allegations as if set forth at length herein.

244. The Sales Representatives' Rights Act, codified at N.J.S.A. 2A:61A-1, et seq. (the "Act"), was enacted in New Jersey to protect a sales representative's right to receive earned commissions and other compensation payable to the sales representative by the principal upon and following termination of the sales representative contract.

245. The Act requires a principal to pay commissions owed to a sales representative within 30 days of termination of the contract. (N.J.S.A. 2A:61A-2).

246. The Act further requires that: "For those orders accepted by the principal, delivered and paid for after the end of a sales representative's contract, the commissions are payable within 30 days after payment would have been due under the contract if the contract had not been terminated." (N.J.S.A. 2A:61A-2).

247. The Act further provides, in pertinent part, that: "A principal who violates or fails to comply with the provisions of section 2 of this act shall be liable to the sales representative for all amounts due the sales representative and all attorney's fees actually and reasonably incurred by the sales representative in the action and court costs." (N.J.S.A. 2A:61A-3).

248. By its acts and/or omissions, Defendants, as principal, has violated and/or otherwise failed to comply with the provisions of the Act in failing to pay Plaintiffs their earned commissions and other compensation payable to Plaintiffs, as sales representatives.

249. By reason of Defendants' violation, Plaintiffs have suffered and will continue to suffer damages.

250. Accordingly, Plaintiffs are entitled all amounts due it by way of earned commissions, together with attorney's fees and court costs pursuant to the Act.

**WHEREFORE**, Plaintiffs' demand judgment on all counts against Defendants as follows:

    a. Awarding monetary damages in the sum of the earned but unpaid commissions overdue and/or to become due to Plaintiffs' on all work completed throughout the duration of their employment. Which includes but is not limited to commission payments for all

specimens and sales procured from vendors, hospital, and medical providers for Defendants' lab;

b. Awarding other compensatory and/or consequential damages;

c. Directing an accounting by Defendants', including of all sums received by Defendants in connection with all identified sales, specimens, medical territories put in place by Plaintiffs' on behalf of Defendants for the duration of such relationships, regardless of when the order is placed or the relationship is established;

d. Awarding punitive damages;

e. Awarding interest;

f. Awarding attorney's fees and costs of suit (including, as per the above-referenced Act); and

g. Awarding such other relief as the Court deems fair and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severally, as follows:

a) For past, present, and future general damages in an amount to be determined at trial;

b) For past, present, and future special damages, including but not limited to past, present, and future lost earnings, economic damages, and others, in an amount to be determined at trial;

c) Any appropriate statutory damages;

d) For costs of suit;

e) For interest as allowed by law;

f) For attorney's fees; and

g) For such other and further relief as the Court may deem proper.

Dated: October 25, 2023

Brooklyn, New York

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

## JURY DEMAND

According to <u>R</u>. 4:35-1, Plaintiff hereby demands a trial by jury as to all issues.

Dated: October 25, 2023

Brooklyn, New York

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

## DEMAND FOR INSURANCE

According to <u>R</u>. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in their action or to indemnify or reimburse for payments made to satisfy the judgment.

Dated: October 25, 2023

Brooklyn, New York

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

## DESIGNATION OF TRIAL COUNSEL

According to <u>R</u>. 4:25-4, TYRONE A. BLACKBURN, ESQ. is hereby designated trial counsel.

Dated: October 25, 2023

Brooklyn, New York

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

## CERTIFICATION

According to <u>R</u>. 4:5-1, the undersigned certifies that the matter in controversy is not the subject of any other action pending in any other court or a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated, and all known, necessary parties have been joined in their action.

Dated: October 25, 2023

Brooklyn, New York

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

# PRESERVATION NOTICE

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the Defendants, and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors. You are directed from this point forward to prevent any "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any of the information set forth hereafter.

If you cause any such alteration, destruction, or change, direct it or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation.

## Electronically Stored Information:

In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

You are directed not to modify, alter, or delete or allow modifications, alterations, or deletions to be made to any electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

## Paper Information:

In terms of the paper information, you are directed to preserve any and all emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents which pertain in any way to the controversy, parties, or witnesses in this matter. Through discovery, we expect to obtain from you a number of documents and other data, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery, in this case, arises independently from any order on such motion. Electronic documents

and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we will likely seek all documents in their original, electronic form, along with metadata or information about those documents on the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner they apply to other evidence. Due to its format, electronic information is quickly deleted, modified, or corrupted. Accordingly, the demand is made that you take every reasonable step to preserve this information until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after this letter's delivery date, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

Dated: October 25, 2023

Brooklyn, New York

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.