<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERIC HILDEBRANDT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SIPARADIGM LLC; HEALTH LYNKS, LLC; MOHAMMED KHAN; AZIZ SAAD; JOHN and JANE DOES 1-10; and ABC CORPS. 1-10, <br><br> Defendants. | Civil Action No. 23-21835 <br><br> **OPINION** <br><br> December 30, 2024 |

**SEMPER**, District Judge.

Before the Court is Defendants Health Lynks, LLC ("Health Lynks"), siParadigm Diagnostics Informatics ("Siparadigm"), Mohammed Khan ("Khan") and Aziz Saad's ("Saad") (hereinafter, collectively, "Defendants") motion to dismiss Plaintiffs' First Amended Complaint (ECF 20, "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 21-1, "Defs. Br.") Plaintiffs filed a brief in opposition. (ECF 24, "Pl. Opp.") Defendants filed a reply. (ECF 28, "Defs. Reply.") The Court reviewed the Plaintiffs' FAC and the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED.**

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

Plaintiffs Eric Hildebrandt ("Mr. Hildebrandt"), Paul Christian Burk ("Mr. Burk"), Laina Dutton ("Ms. Dutton"), Lawrence LaMaina ("Mr. LaMaina"), Samantha Libby ("Ms. Libby"),

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). Accordingly, the facts are taken from Plaintiffs' First Amended Complaint.

Efthimios Mariakakis ("Mr. Mariakakis"), Michael McDonough ("Mr. McDonough"), Lindsey Forbus ("Ms. Forbus"), Edward Dix ("Mr. Dix"), Peter Franzone ("Mr. Franzone"), John Berry ("Mr. Berry"), Ryan Miller ("Mr. Miller"), Hank Swank ("Mr. Swank"), John Ferrazza ("Mr. Ferrazza") Charles Taylor ("Mr. Taylor"), and AJ Holderman ("Mr. Holderman"), bring this action on behalf of themselves and all similarly-situated individuals (the "Class") who are seeking recovery against Defendants for N.J.S.A. 34:11-56a, et seq., unpaid commission, fraud, unfair deceptive business practices, aiding and abetting, and breach of contract. (FAC ¶ 1.)

Plaintiffs were employed as sales managers and or sales specialists to secure laboratory orders from prospective health care professionals such as doctors, hospitals pharmacies, and health networks. (*Id*. ¶ 46.) These orders would then be fulfilled by Defendants' laboratories, located at multiple locations in the United States as well as overseas. (*Id*.) Plaintiffs traveled to clients and prospective clients securing laboratory contracts for Defendants' laboratories. (*Id*. ¶ 47.)

### A. Plaintiffs' Individual Allegations

**Paul Christian Burk**: Mr. Burk was employed by Health Lynks beginning in April 2022. (*Id*. ¶ 20; *see* ECF 21-3, Ex. A., "Burk Offer Letter.") According to the FAC, Mr. Burks was terminated at the direction of Defendant Saad, due to Mr. Burk's age. (FAC ¶ 57.) Further, the FAC alleges that Mr. Burk engaged in "protected activity" when he questioned why he was required to "turn over his territories to people less experienced and significantly younger (under 40) than him." (*Id*. ¶ 59.) Additionally, the FAC alleges Defendants failed to fully compensate him. (*Id*. ¶¶ 60-62.)

**Laina Dutton**: Ms. Dutton was employed by Health Lynks beginning in February 2022. (*Id*. ¶ 14; *see* ECF 21-4, Ex. B., "Dutton Offer Letter.") The FAC alleges that Ms. Dutton was placed on a performance improvement plan on or about June 13, 2022, due to her "call[ing] the Defendants out on their fraudulent practices, and she raised concerns over the Defendants' misrepresentations of her job requirements, the Defendants' failure to define expectations when

2

asked, and the Defendants' apparent breach of contract by reducing Ms. Dutton's compensation." (FAC ¶¶ 63-64.) The FAC alleges Defendants "constructively discharged" Ms. Dutton because she "requested accommodations that were rejected, and she questioned why she was compensated significantly less than her male colleagues." (*Id*. ¶ 66.)

**Lawrence LaMaina**: Mr. LaMaina was employed by Health Lynks beginning in May 2021. (*Id*. ¶ 13; *see* ECF 21-5, Ex. C., "LaMaina Offer Letter.") The FAC alleges Mr. Lamaina was "wrongfully terminated on or about 05/24/2022 due to his engagement in a protected activity when he raised concerns about race and age discrimination." (FAC ¶ 70.) Upon information and belief, the FAC asserts that Mr. LaMaina was replaced by someone several years his junior and following his termination, Defendants failed to fully compensate him pursuant to the contract. (*Id*. ¶¶ 73-75.)

**Samantha Libby**: Ms. Libby was employed by Health Lynks beginning in December 2021. (*Id*. ¶ 12; see ECF 21-6, Ex. D., "Libby Offer Letter.") Per the FAC, Ms. Libby was "wrongfully placed on a performance improvement plan" and "terminated in an act of retaliation" for engaging in protected activity. (FAC ¶¶ 78-83.) The FAC also alleges that Ms. Libby is owed unpaid commissions. (*Id*. ¶ 83.)

**Efthimios Mariakakis**: Mr. Mariakakis was employed by Health Lynks beginning in May 2021. (FAC ¶ 13; *see* ECF 21-7, Ex. E., "Mariakakis Offer Letter.") Mr. Mariakakis was allegedly wrongfully terminated after filing internal complaints. (FAC ¶ 85.) Per the FAC, Defendants have allegedly failed to pay Mr. Mariakakis his commission and regular pay. (*Id*. ¶¶ 87-88.)

**Michael McDonough**: Mr. McDonough was employed by Health Lynks beginning in July 2021. (FAC ¶ 9; *see* ECF 21-8, Ex. F., "McDonough Offer Letter.") The FAC alleges Mr. McDonough was "wrongfully terminated due to his age and was replaced by someone significantly younger and less experienced." (FAC ¶ 90.) Additionally, Defendants allegedly owe Mr. McDonough unpaid commissions. (*Id*. ¶ 93.)

**Lindsey Forbus**: Ms. Forbus was employed by Health Lynks beginning in May 2021. (FAC ¶ 16; *see* ECF 21-9, Ex. G., "Forbus Offer Letter.") The FAC alleges Ms. Forbus was "harassed and targeted and retaliated against for taking medical leave. (FAC ¶ 96.) Further, Defendants allegedly failed to fully compensate Ms. Forbus, resulting in unpaid commissions. (*Id*. ¶¶ 97-98.)

**Edward Dix:** Mr. Dix was employed by Health Lynks beginning in June 2022. (FAC ¶ 22; *see* ECF 21-10, Ex. H., "Dix Offer Letter.") The FAC alleges that Defendants engaged in acts of wage discrimination and retaliation in response to Mr. Dix raising concerns regarding Defendants' alleged violation of patients' HIPAA rights and regarding Defendants' alleged decision to renege on contractual obligations. (FAC ¶¶ 101-06.) Further, Defendants allegedly failed to fully compensate Mr. Dix, resulting in unpaid commissions. (*Id*. ¶¶ 103, 106.)

**Peter Franzone:** Mr. Franzone was employed by Health Lynks beginning in February 2022. (FAC ¶ 19; *see* ECF 21-11, Ex. I., "Franzone Offer Letter.") Mr. Franzone was terminated after raising concerns regarding the Defendants' alleged violation of patients' HIPAA rights. (FAC ¶¶ 108, 110.) Further, the FAC alleges that Mr. Franzone raised concerns over the alleged unpaid commissions Defendants owed to Mr. Franzone. (*Id*. ¶ 112.)

**John Berry:** Mr. Berry was employed by Health Lynks beginning in June 2022. (FAC ¶ 23; *see* ECF 21-12, Ex. J., "Berry Offer Letter.") Mr. Berry was allegedly the "victim" of Defendants' "pattern and practice of wage discrimination." (FAC ¶ 115.) In addition, the FAC alleges Mr. Berry raised concerns regarding his alleged unpaid commissions. (*Id*. ¶ 118.)

**Ryan Miller**: Mr. Miller was employed by Health Lynks beginning in May 2021. (FAC ¶ 18; *see* ECF 21-13, Ex. K., "Miller Offer Letter.") The FAC asserts that Mr. Miller was "retaliated against[,]" "terminated without cause" and that Defendants failed to fully compensate Mr. Miller. (FAC ¶¶ 119-23.)

**Hank Swank**: Mr. Swank was employed by Health Lynks beginning in May 2021. (FAC ¶ 17; *see* ECF 21-14, Ex. L., "Swank Offer Letter.") The FAC asserts that Mr. Swank was placed on a performance improvement plan as a pretext to terminate Mr. Swank (FAC ¶¶ 126-27.) Further, the FAC alleges that Mr. Swank was retaliated against for raising concerns over the HIPAA violations Defendant organization allegedly committed. (*Id*. ¶ 128.) Finally, the FAC contends that Mr. Swank is owed unpaid commissions. (*Id*. ¶ 130.)

**John Ferrazza**: Mr. Ferrazza was employed by Health Lynks beginning in April 2021. (FAC ¶¶ 131-32; *see* ECF 21-15, Ex. M., "Ferrazza Offer Letter.") The FAC asserts that Mr. Ferrazza was retaliated against for raising concerns over HIPAA violations Defendants allegedly committed, and as a result, Mr. Ferrazza lost over 6 months' salary and is owed unpaid commissions. (FAC ¶¶ 133-38.)

**Charles Taylor**: Mr. Taylor was employed by Health Lynks beginning in June 2022. (FAC ¶ 15; *see* ECF 21-16, Ex. N., "Taylor Offer Letter.") The FAC asserts that Mr. Taylor was retaliated against for raising concerns over HIPAA violations Defendants allegedly committed and as a result Mr. Taylor lost over 6 months' salary and is owed unpaid commissions. (FAC ¶¶ 143-45.) Additionally, the FAC asserts Mr. Taylor's protected disability rights were violated when Mr. Taylor requested medical leave and was denied by Defendant Saad. (*Id*. ¶ 141.)

**AJ Holderman**: Mr. Holderman was employed by Health Lynks beginning in April 2022. (FAC ¶ 10; *see* ECF 21-17, Ex. O., "Holderman Offer Letter.") The FAC asserts that Mr. Holderman's disability rights were violated when Mr. Holderman informed Defendants that he was disabled, and his reasonable accommodations request was denied. (FAC ¶¶ 143-45.) Further, the FAC contends that Mr. Holderman is owed unpaid commissions. (*Id*. ¶¶ 151-52.)

**Eric Hildebrandt**: Mr. Hildebrandt was employed by Health Lynks beginning in July 2021. (FAC ¶ 21; *see* ECF 21-18, Ex. P., "Hildebrandt Offer Letter.") The FAC asserts that Mr.

Hildebrandt is "grossly underpaid" and his commission structure of 1% on the revenue he brings in is "an act of retaliation" by Mr. Hildebrandt's managers due to Mr. Hildebrandt's reporting of HIPAA violations and raising concerns of pay disparity and pay discrimination. (FAC ¶¶ 153-56.) The FAC contends that Mr. Hildebrandt endured a pattern and practice of being disparaged and defamed by his managers. (FAC ¶ 157.) Further, the FAC maintains that Mr. Hildebrandt is owed unpaid commissions. (*Id*. ¶ 158.)

### B. Procedural History

On November 2, 2023, Plaintiffs filed their initial Complaint, alleging, *inter alia*, claims on behalf of Plaintiffs themselves, as well as a putative "collective" and "class" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., together with a variety of New Jersey state statutes, for allegedly unpaid minimum wages and overtime, together with various common law claims for unpaid earnings and allegedly "guaranteed" commissions. (ECF 1.)

On December 15, 2023, Defendants filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 9.) On January 25, 2024, Plaintiffs requested leave to file an amended complaint, instead of filing an opposition to Defendants' motion to dismiss (ECF 14), which Defendants consented to. (ECF 18.) In turn, on February 7, 2024, the Court granted Plaintiffs' request, administratively terminated Defendants' motion to dismiss without prejudice, and directed Plaintiffs to file their Amended Complaint by February 9, 2024. (ECF 19.)

On February 9, 2024, Plaintiffs filed their Amended Complaint (ECF 20), rewriting their claims, and now asserting the following causes of action, all made pursuant to common law: count one – breach of contract (FAC ¶¶ 159-375); count two – fraud (*id*. ¶¶ 376-484); count three – breach of implied covenant of good faith & fair dealing (*id*. ¶¶ 485-90); count four – aiding and abetting (*id*. ¶¶ 491-96); count five – unpaid earned commission, unpaid sign on bonus (*id*. ¶¶ 497-518.)

On October 30, 2024, the Court ordered supplemental briefing instructing the parties to conduct a choice of law analysis with respect to Plaintiffs' claims. (ECF 29.) The supplemental briefing was received by the Court on November 22, 2024 (ECF 32, "Def. Supp. Br.") and November 23, 2024 (ECF 33, "Pl. Supp. Br."), respectively.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

7

"When a complaint involves allegations of fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b) to state a claim under Rule 12(b)(6)." *Franchitti v. Cognizant Tech. Sols. Corp.*, 555 F. Supp. 3d 63, 68 (D.N.J. 2021) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155 (3d Cir. 2014)); *see also* Fed. R. Civ. P. 9(b) (stating that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud," though conditions of the mind such as knowledge may be pled generally). "In order to satisfy Rule 9(b), a complaint must provide 'all of the essential factual background that would accompany the first paragraph of any newspaper story' — that is, the 'who, what, when, where and how' of the events at issue.'" *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). This standard has been relaxed slightly for fraudulent omission claims where pleading specific times and places may not be practicable and, instead, Rule 9(b) may be satisfied by "alleg[ing] what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *See Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 264 (D.N.J. 2011) (quoting *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010)).

### III.    DISCUSSION

#### A.    Choice of Law

Plaintiffs assert the following claims on behalf of the individually named Plaintiffs and the putative classes: Count 1: breach of contract; Count 2: fraud; Count 3: breach of implied covenant of good faith and fair dealing; Count 4: aiding and abetting; and Count 5: unpaid earned commission/unpaid sign on bonus.

Federal courts exercising diversity jurisdiction must apply the choice-of-law principles of the forum state. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (citing

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). New Jersey follows the "most significant relationship" test, a "case-by-case, qualitative analysis" consisting of two prongs. *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 293 (D.N.J. 2009) (citing *P.V. ex rel T.V. v. Camp Jaycee*, 962 A.2d 453, 460-61 (N.J. 2008)). The first prong requires a court to examine the substance of the potentially applicable laws to determine whether an actual conflict exists. *Camp Jaycee*, 962 A.2d at 460 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). If no conflict exists, the analysis ends, and the court applies the law of the forum state. *Camp Jaycee*, 962 A.2d at 461. If a conflict does exist, the court turns to the second prong, which requires the court to weigh the factors enumerated in the Restatement section corresponding to the underlying cause of action. *Id.*; *see also* RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 (1971).

Here, based on the parties' supplemental briefing, the parties agree that the laws of the state of New Jersey should apply for Counts One through Four. (*See* ECF 32, Def. Supp. Br.; ECF 33, Pl. Supp. Br. at 2, 8.) Therefore, based on the consent of the parties, the Court will apply New Jersey law when analyzing Counts One through Four of Plaintiffs' FAC. With respect to Count 5 of the FAC, the Court is unable to conduct a choice of law analysis at this time.[2]

**B.     Defendant Mohammed Khan**

Per Plaintiffs' supplemental briefing, Plaintiffs have voluntarily dismissed Defendant Mohammed Khan from this action. (ECF 33, Pl. Supp. Br. at 8.) Accordingly, Defendants' motion is **GRANTED** and Defendant Mohammed Khan is **DISMISSED** from this action.

**C.     Breach of Contract (Count One)**

---

[2] The Court is unable to decipher Plaintiffs' allegations in Count 5 and cannot conduct a meaningful choice of law analysis as currently pled. A court may find the choice-of-law analysis premature at the motion-to-dismiss stage and decline to conduct the analysis. *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-13544, 2018 WL 4144683 at *4, 2018 U.S. Dist. LEXIS 147746 at *13 (D.N.J. Aug. 29, 2018). Courts "have done so where either (i) the defendant failed to explain why there was a conflict between the laws of different relevant jurisdictions, or (ii) key facts relevant to a choice-of-law analysis were not available." *Id.* (internal citations omitted); *see also Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 WL 6607148 at *11, 2019 U.S. Dist. LEXIS 209659 at *11-12 (D.N.J. Dec. 5, 2019).

Defendants contend that the breach of contract claim should be dismissed because it fails as a matter of law. The Court agrees with Defendants.

"To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020) (citing *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013)). To establish that a valid contract exists, a plaintiff must plead the following: (1) a meeting of the minds; (2) an offer and acceptance; (3) consideration; and (4) reasonably certain contract terms. *Sheet Metal Workers*, 737 F. 3d at 900.

Defendants contend that Plaintiffs: (1) "complete[ly]" rewrite the document that outlines the terms of the respective Plaintiffs employment with Defendant Health Lynks (ECF 21-1, Defs. Br. at 16); (2) fail to demonstrate any promise of continued employment upon which Plaintiffs could contend they were contractually "guaranteed" any amount they were not paid (*id*. at 17); and (3) fail to plead any specific basis under which Plaintiffs can claim that there was a breach of any contract. (*Id*.) In response, Plaintiffs contend that it is "not necessarily the parties' true intent but the intent, as expressed or apparent in writing, that controls." (ECF 24, Pl. Opp. at 7.)

Despite this contention, Plaintiffs have not asserted a plausible entitlement to relief for breach of contract. Indeed, Plaintiffs have failed to plead any specific basis under which Plaintiffs can claim that the respective "contracts" were breached. Accordingly, Defendants' motion to dismiss Count One is **GRANTED** and Count One of the FAC is **DISMISSED** without prejudice.

**D.     Fraud (Count Two)**

In Count Two, Plaintiffs bring a claim generally for "fraud." (FAC at 41.) Federal Rule of Civil Procedure 9(b) states, in part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Accordingly, in a fraud claim, Rule 9(b)'s heightened pleading standard "requires a plaintiff to plead the 'who, what, when, where, and how' of the conduct giving rise to the claim." *Kowalsky v. Deutsche Bank Nat'l Tr. Co.*, No. 14-07856, 2015 WL 5770523, at *8 (D.N.J. Sept. 30, 2015). "The purpose of Rule 9(b) is 'to provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior.'" *Kowalsky*, 2015 WL 5770523, at *8 (quoting *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 2000)). "Plaintiff need not always identify the particular time and place of the misrepresentation, however, so long as the complaint contains some 'alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud.'" *Peters v. Countrywide Home Loans, Inc.*, No. 15-6329, 2016 WL 2869059, at *3 (D.N.J. May 17, 2016) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985)).

Plaintiffs seem to base their cause of action for "fraud" on a claim of fraudulent inducement. "In order to establish a claim for fraudulent inducement, five elements must be shown: '(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment.'" *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (quoting *Metex Mfg. Corp. v. Manson,* No. 05-2948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008)). "[F]raud in the inducement is a far narrower theory than breach of contract; it does not cover an ordinary breach of promise about future events. … misrepresentations of present or past fact constitute a fairly narrow category, and must be construed so as to maintain the border

11

between actions in tort and contract." *Munenzon v. Peters Advisors, LLC*, 553 F. Supp. 3d 187, 205 (D.N.J. 2021). Further, "statements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong." *Id*. (quoting *Chatlos Systems, Inc. v. National Cash Register Corp.*, 479 F. Supp. 738, 748–49 (D.N.J. 1979); *aff'd in part, rev'd in part*, 635 F.2d 1081 (3d Cir. 1980)). In addition, "statements that can be categorized as 'puffery' or 'vague and ill-defined opinions' are not assurances of fact and thus do not constitute misrepresentations." *Munenzon*, 553 F. Supp. 3d at 205 (quoting *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1997), *aff'd*, 172 F.3d 859 (3d Cir. 1998) (quoting *Diaz v. Johnson Matthey*, Inc., 869 F. Supp. 1155, 1165 (D.N.J. 1994))).

Here, Plaintiffs' allegations underlying the fraud claim fail to meet the heightened pleading required under Rule 9(b). As currently pled, the FAC fails to inject any level of precision or measure of substantiation into the broad allegations. While Plaintiff attempts to cure these deficiencies through declarations attached to Plaintiffs' opposition papers, these may not be properly considered on a motion to dismiss. *Hart v. Elec. Arts, Inc.,* 740 F. Supp. 2d 658, 665 (D.N.J. 2010). Similarly, Plaintiffs make further factual assertions with respect to the fraud claims in their opposition papers. However, a "Plaintiff may not amend his pleadings through his briefing." *Id*. Looking solely to the FAC, Plaintiffs fail to plead with the heightened level of specificity required under Rule 9(b).

Based upon the foregoing, Defendants' motion to dismiss Count Two is **GRANTED**, and Count Two of Plaintiffs' FAC is **DISMISSED** without prejudice.

### E. Breach of Implied Covenant of Good Faith and Fair Dealing (Count Three)

As to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, Defendants assert that this claim is impermissible as it is duplicative of the breach of contract claim. (ECF 21-1, Defs. Br. at 23-25.)

The implied covenant of good faith and fair dealing is a "component of every contract" that requires both parties to a contract act in "good faith[,]" that is, they must "adher[e] to 'community standards of decency, fairness, or reasonableness.'" *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007) (internal citations omitted). Good faith "requires a party to refrain from 'destroying or injuring the right of the other party to receive its contractual benefits.'" *Id.* (citation omitted). To succeed on a claim for breach of the covenant of good faith and fair dealing, a party must prove that "(1) the [opposing party acted] in bad faith or with a malicious motive, (2) to deny the [party] some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Yapak, LLC v. Mass. Bay Ins. Co.*, No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009).

As a starting point, Plaintiffs fail to plausibly plead a violation of the implied covenant of good faith and fair dealing as the allegations in the FAC are set forth in a conclusory fashion. Plaintiffs are reminded that the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey,* 481 F.3d 187, 211 (3d Cir. 2007); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997) ("[Courts] need not accept 'bald assertions' or 'legal conclusions' contained in the complaint.").

Moreover, pursuant to New Jersey law, "a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." *Kare Distribution, Inc. v. Jam Labels & Cards LLC*, No. 09-00969,

13

2012 WL 266386, at *7 (D.N.J. Jan. 30, 2012) (internal quotation marks omitted). Here, the conduct alleged in the FAC arises out of the exact conduct underlying the alleged breach of contract, and it is difficult for the Court to discern the factual allegations which independently construct Plaintiffs' implied covenant claim.

Based upon the Court's review of the pleadings, Plaintiffs seemingly recite the identical allegations found in their breach of contract claim concerning Defendants' purported failure to honor their offer letters. Specifically, Plaintiffs plead in a conclusory fashion that that Defendants failed to act in good faith by: (1) failing to "pay the contracted and negotiated required sign on bonuses to Plaintiffs"; (2) failing to "provide performance reviews to Plaintiffs as indicated by defendants' employment contracts"; (3) reneging on "Plaintiffs' contractually guaranteed salary by reducing their base salaries months into their employment engaging in the conduct "as set forth throughout the Complaint"; and reneging "on Plaintiffs' contractually guaranteed commission structure." (ECF 20, FAC ¶ 486.)

The claims set forth in Count One of the Amended Complaint for Breach of Contract contain similar allegations as to the alleged conduct and alleged damages for each of the individual Plaintiffs – "Defendants stole all of Plaintiff []'s territories, networks and resources, reassigned them to younger employees, reduced Plaintiff []'s salary, refused to pay his commissions and ultimately terminated []" (*Id.* ¶¶ 175, 189, 202, 215, 228, 240, 254, 267, 280, 293, 306, 319, 332, 345, 358, 372); "Defendants failed to execute their obligations fully and faithfully under the contract when they . . . paid partial commission payments and failed to pay the remaining balances . . . ." (*Id.* ¶ 374).

The Court agrees that as pled, this claim is duplicative of the breach of contract claim. In sum, the Court finds that as pled, the FAC does not provide sufficient independent information to support the claim for breach of good faith and fair dealing. *See Connelly v. Lane Const. Corp.*, 809

14

F.3d 780, 786 (3d Cir. 2016). Defendants' motion to dismiss Count Three is **GRANTED** and Count Three of the FAC is **DISMISSED** without prejudice.

### F.     Aiding and Abetting (Count Four)

Count Four of Plaintiffs' FAC asserts a cause of action for aiding and abetting. Under New Jersey law, in order to hold a defendant liable for a civil claim of aiding and abetting, a plaintiff must show that "'(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.'" *State, Dept. of Treasury, Div. of Inv. ex. rel. McCormac v. Qwest Communications Intern, Inc.*, 904 A.2d 775, 784 (N.J. Super. Ct. App. Div. 2006), (quoting *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004) (internal citations omitted)). In addition, a claim for aiding and abetting also requires proof of the underlying tort. *Qwest Communications Intern, Inc.*, 904 A.2d at 784. Here, Plaintiffs' claims for breach of contract and fraud were dismissed as they were not adequately pled. As such, there is no underlying tort serving as the basis for an aiding and abetting claim at this time.[3] However, assuming *arguendo* those claims survived, Plaintiffs have not adequately pled a cause of action for aiding and abetting. There are no specific allegations as to which specific defendant allegedly aided performing a wrongful act, or that such specific defendant was aware of his role in tortious activity and knowingly assisted some other defendant in such activity.

Therefore, Defendants' motion to dismiss Count Four is **GRANTED** and Count Four of the FAC is **DISMISSED** without prejudice.

### G.     Unpaid Commissions/Unpaid Sign on Bonus (Count Five)

---

[3] In support of the aiding and abetting action, Plaintiffs refer the Court to various declarations submitted by Plaintiffs as part of their opposition filings. The Court once again instructs Plaintiff that these may not be properly considered on a motion to dismiss. *Hart v. Elec. Arts, Inc.,* 740 F. Supp. 2d 658, 665 (D.N.J. 2010).

As pled, Plaintiffs' FAC fails to state a claim upon which relief can be granted. Despite vague allegations for "unpaid earned commission" and/or "unpaid sign on bonus[,]" Plaintiffs' fail to identify a single statute, regulation, or common law theory for any of the 24 separate states or jurisdictions named in the FAC under Count Five. Based upon the foregoing, Defendants' motion to dismiss Count Five is **GRANTED** and Count Five of the FAC is **DISMISSED** without prejudice.

### IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED**. The Court dismisses Plaintiffs' Complaint without prejudice. Plaintiffs have thirty (30) days to file an amended pleading curing the deficiencies noted herein. If Plaintiffs do not file an amended pleading within that time, the claims dismissed without prejudice will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:     Clerk
cc:       Leda D. Wettre, U.S.M.J.