# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIC HILDEBRANDT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SIPARADIGM LLC; HEALTH LYNKS, LLC; AZIZ SAAD; CHRIS WEIDMAN; JOHN and JANE DOES 1-10; and ABC CORPS. 1-10; <br><br> Defendants. | Civil Action No.: 2:23-cv-21835-JKS-LDW <br><br> ***Document Electronically Filed*** <br><br><br> **MOTION DATE: APRIL 20, 2026** |

## BRIEF IN OPPOSITION TO PLAINTIFFS' "LETTER-MOTION" FOR RECONSIDERATION

**DONNELLY KELLY BLACKWELL & GALLIGAN, LLC**
163 Madison Avenue, Suite 320
Morristown, New Jersey 07960
(973) 200-6400
Attorneys for Defendants

Jason A. Meisner, Esq.
Joseph P. Fiteni, Esq.
    *Of Counsel and On the Brief*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...............................................................................ii

PRELIMINARY STATEMENT ......................................................................... 1

FACTUAL & PROCEDURAL BACKGROUND .................................................. 3

LEGAL ARGUMENT ...................................................................................... 5

    I.    PLAINTIFF'S "LETTER-MOTION" IS UNTIMELY AND PROCEDURALLY IMPROPER........................................................ 5

    II.    THE COURT'S DECISION WAS SOUND AND THERE IS NO BASIS UPON WHICH TO RECONSIDER OR REVERSE....................................................................................... 7

CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Emma Bengasbia v. BlackRock Inc., et al.*, S.D.N.Y.
  Case. No. 1:25-cv-00549 ...............................................................................15

*Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120 (3d Cir. 1983).........................8

*In re Am. Classic Voyages Co.*, 405 F.3d 127 (3d  Cir. 2005) ..................................8

*Joseph Cartagena v. Terrance Dixon, et al.*, S.D.N.Y.
  Case No. 1:25-cv-03552 .................................................................................10

*Link v. Wabash Railroad*, 370 U.S. 626, 82 S. Ct. 1386, 1390,
  8 L. Ed. 2d 734 (1962) ....................................................................................8

*Melvin Moore p/k/a 4Rest v. Chloe Bailey, et al.*, S.D.N.Y.
  case No. 1:25-cv-01472 ..................................................................................15

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) ... 7-8

*Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984) ........ Passim

**Other Authorities**

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 ...............................................4

**Rules**

F. R. Civ. P. 8.............................................................................................................5

L. Civ. R. 7.1(d)(3)....................................................................................................7

L.Civ.R. 7.1(b) ..........................................................................................................6

L.Civ.R. 7.1(d) ..........................................................................................................6

## <u>TABLE OF AUTHORITIES (CONT'D.)</u>

<u>**PAGE**</u>

L.Civ.R. 7.2 ........................................................................................................................6

L.Civ.R. 7.1(i) ....................................................................................................................6

## PRELIMINARY STATEMENT

The moving party Plaintiffs are sixteen (16) individuals hired and employed by defendant Health Lynks, LLC ("Health Lynks") as sales representatives for various regions around the country between 2021 and 2023. Each of their roles involved sales, specifically, traveling to health care professionals and attempting to secure laboratory orders to be fulfilled by Heath Lynks' affiliate, SiParadigm Diagnostics Informatics.

After having been paid both salary, and, in some cases, discretionary bonuses, each of the Plaintiffs either resigned from their employment, or was terminated by Health Lynks. In November 2023, Plaintiffs filed their initial complaint against Health Lynks, SiParadigm and certain executives (hereinafter, collectively, "Defendants"), alleging a variety of unsupported, unsubstantiated and legally incognizable theories. Following multiple motions to dismiss by Defendants or pursuant to Court Order, Plaintiffs have filed multiple amended complaints containing various iterations of their claims.

The most recent version of Plaintiffs' claims was filed after the Court consolidated two separate matters filed by the same Plaintiffs, by way of a new Complaint on March 28, 2025 (the "C.Comp."). The C.Comp. was Plaintiffs' 5th attempt to coherently state a cause of action, and despite prior direction by the Court (as well as the arguments by Defendants in prior motions to dismiss), contained over

1,700 separately numbered paragraphs allegedly supporting eight different causes of action, some on behalf of each individual plaintiff, and others on behalf of only certain Plaintiffs. As such, Defendants filed a motion to strike or dismiss the C.Comp. pursuant to F. R. Civ. P. 8, or, alternatively, to dismiss for failure to state a claim pursuant to F. R. Civ. P. 12(b)(6).

In response to Defendants motion to strike or dismiss the C.Comp, on December 3, 2025, counsel for Plaintiffs advised the Court in this matter and other matters before the District Court that circumstances "necessitate my withdrawal from active practice and my pending matters before this Court." (ECF 59). Counsel closed the letter advising that he would be "ensuring the orderly transfer of files and case materials to successor counsel." (See Id.)

In December 2025, the Court entered an Opinion and Order, dismissing the C.Comp. without prejudice, for failure to comply with F. R. Civ. P. 8, and providing Plaintiff thirty (30) days to file an amended complaint, or the C.Comp. would be dismissed with prejudice. The Court in that same Order, acknowledged Plaintiffs' counsel's withdrawal, and noted: "Plaintiffs' counsel's withdrawal gives Plaintiffs an opportunity to retain new counsel, if they wish, and file a coherent, proper amended consolidated complaint." (ECF 60). Plaintiffs failed to timely file an amended complaint within the thirty-day period, and moreover, as it is has now become readily apparent, counsel's representations to the Court concerning both his

2

withdrawal from this matter, and facilitating an orderly transfer to successor counsel, were simply false. Accordingly, on February 18, 2026, the Court entered an Order dismissing the C.Comp, with prejudice, as Plaintiffs had not timely filed an amended complaint, or demonstrated good cause to extend the deadline. [1]

On March 18, 2026, Plaintiffs filed a "letter-motion" seeking reconsideration of the Court's dismissal with prejudice. Plaintiffs' application is untimely and procedurally improper, and should be denied on such grounds. However, even upon consider the substantive arguments presented by Plaintiffs, there is no basis upon which the Court should reconsider or reverse its decision. Accordingly, Plaintiffs' "letter-motion" should be denied in its entirety.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

The factual and procedural background of this matter can be readily gleaned from the Motion to Dismiss resulting in the Court's Opinions and Orders of December 31, 2025, and February 18, 2026. Nonetheless, Defendants submit that

---

[1] Amid the 16 Plaintiffs is the alleged representation of plaintiff John Berry. Of note, Mr. Berry has been deceased since September 5, 2023. Despite repeated notification to counsel that John Berry was deceased (at the time the initial complaint was filed), multiple iterations of the Complaint still included John Berry as a Plaintiff. Indeed, despite the Court's Letter Order Report and Recommendation confirming that there is no party in interest to pursue claims for John Berry (due to the failure to timely substitute the Administrator of the Estate of John Berry) (ECF 56), the "Third-Amended Complaint" belatedly submitted on February 13, 2026, once again inexplicably includes John Berry as a represented Plaintiff.

3

the following represent pertinent and significant facts and history of this dispute:

*Case No. 2:23-cv-21835 – Allegations of Breach of Contract and Wage Violations*

- November 2, 2023: Plaintiffs file an initial complaint alleging, *inter alia*, violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., together with a variety of New Jersey statutes, for allegedly unpaid minimum wages and overtime, together with various common law claims for unpaid earnings and allegedly "guaranteed" commissions.

- December 15, 2023: Defendants file a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

- On January 25, 2024, Plaintiffs request leave to file an amended complaint, instead of filing an opposition to Defendants' motion to dismiss, which is granted by the Court.

- February 9, 2024: Plaintiffs file the First Amended Complaint, completely rewriting their claims, and asserting causes of action for breach of contract, fraud, breach of implied covenant of good faith & fair dealing, aiding and abetting and "unpaid earned commission, unpaid sign on bonus."

- March 11, 2024: Defendants file a Motion to Dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

- December 30, 2024: The Court grants Defendants' Motion to Dismiss the Amended Complaint, and provides Plaintiffs 30 days to file a further Amended Complaint addressing the identified deficiencies.

- January 30, 2025: Plaintiffs file a Second Amended Complaint.

- March 4, 2025: Defendants file a Motion to Dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

*Case No. 2:23-cv-21835 – Allegations of Breach of Contract and Wage Violations*

- January 17, 2024: Plaintiffs file an initial complaint alleging, *inter alia*, age discrimination, disability discrimination and violations of New Jersey's Conscientious Employee Protection Action.

4

- August 7, 2024: Defendants file a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

*The Consolidated Cases*

- March 11, 2025: With motions to dismiss pending in both cases, the Court issues an Order consolidating the Plaintiffs' two pending actions (No. 23-cv-21835 and No. 24-cv-265), and directs Plaintiffs to file a single, consolidated amended complaint in Case No. 23-cv-21835.

- March 28, 2025: Plaintiffs file a new "Consolidated Complaint".

- May 2, 2025: Defendants file a Motion to Dismiss the C.Comp. pursuant to Fed. R. Civ. P. 12(b)(6), or, alternative, to dismiss or strike pursuant to Fed. R. Civ P. 8.

- December 31, 2025: The Court enters an Opinion and Order, dismissing the C.Comp., without prejudice, for failure to comply with F. R. Civ. P. 8, and providing Plaintiff thirty (30) days to file an amended complaint, or the C.Comp. would be dismissed with prejudice.

- February 18, 2026: The Court enters an Order dismissing the C.Comp., with prejudice, as Plaintiffs had not filed an amended complaint within thirty days, Order, or demonstrated good cause to extend the deadline.

On March 18, 2026, Plaintiffs (minus one Plaintiff, John Berry, whose claims were previously dismissed), filed a "letter-motion" seeking reconsideration of the Court's Order of February 18, 2026, and an extension *nunc pro tunc* for the filing of a new amended complaint.

## LEGAL ARGUMENT

### I.   PLAINTIFF'S "LETTER-MOTION" IS UNTIMELY AND PROCEDURALLY IMPROPER.

District of New Jersey Local Civil Rule 7.1(i) is unequivocally clear with respect to the timing of a motion for reconsideration:

5

> Unless otherwise provided by statute or rule (such as Fed. R. Civ. P. 50, 52 and 59), a motion for reconsideration **shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge**. A brief setting forth concisely the matter or controlling decisions which the party believes the Judge has overlooked shall be filed with the Notice of Motion. (*Emphasis added*)

Here, the Court's Order dismissing Plaintiffs' Complaint with Prejudice was entered February 18, 2026. Accordingly, a Motion for Reconsideration was required to be filed by March 4, 2026. Plaintiffs offer no explanation for his failure to file the Motion for Reconsideration by that date, or why counsel was delayed in filing until March 18, 2026. This is only the latest example of Plaintiffs' complete disregard, or ignorance, of the Court's Rules, a history of which is long and repeated in the record. It should not be countenanced. The "Letter-Motion" for Reconsideration should be denied on this basis alone.

Plaintiffs' motion similarly shows a complete disregard for the general Rules applicable to motion practice. There is no Notice of Motion or proposed form of Order, as required by L.Civ.R. 7.1(b). The only document submitted by Plaintiffs is a "letter-motion", ignoring the requirement that a Brief is required, or "a statement that no brief is necessary and the reasons therefor" as set forth in L.Civ.R. 7.1(d). Plaintiffs' "letter-motion" is single-spaced and a disproportionate and small font, ignoring the requirements for a proper brief as set forth in L.Civ.R. 7.2. Further, Exhibit "A" attached to the "letter-motion", a purported letter from a purported board-certified dermatologist, is not introduced or supported by an Affidavit,

Declaration, etc., and thus is entirely unreliable and should be disregarded by the Court. In sum, Defendants submit that the Court should not grant relief to Plaintiffs who cannot abide and have repeatedly disregarded even the most basic requirements and rules of the Court.[2]

## II.   THE COURT'S DECISION WAS SOUND AND THERE IS NO BASIS UPON WHICH TO RECONSIDER OR REVERSE.

Even assuming, *arguendo*, that the Court is willing to entertain the substance of Plaintiffs' "Letter-Motion" given its untimeliness and failure to comply with Court Rules, there is no basis upon which to reconsider or reverse the Court's Order of February 18, 2026.

Plaintiffs initially cite to *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984) to argue that the Court should not have converted the dismissal to one with prejudice, based upon consideration of six factors discussed by the Third Circuit in its decision. Notably, after consideration of the cited factors in the *Poulis* case, the Third Circuit actually affirmed the District Court's dismissal with prejudice, finding there was no abuse of discretion in ordering the dismissal. The other cases cited by Plaintiffs to support are not at all analogous to the facts and circumstances present here. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,

---

[2] Given Plaintiffs' counsel's total indifference for this Court's Rules, Defendants submit, in anticipation, that any reply submitted in support of the Motion for Reconsideration should be stricken and disregarded, given that reply briefs are not permitted in support of motions for reconsideration pursuant to L. Civ. R. 7.1(d)(3).

7

507 U.S. 380, 395 (1993) and *In re Am. Classic Voyages Co.*, 405 F.3d 127 (3d Cir. 2005) both involved an extension of time for a creditor to file a proof of claim in a bankruptcy proceeding, which are subject to provisions of the Bankruptcy Code and Bankruptcy Court Rules not involved here. *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983) involved a motion to reopen a default judgment, which is subject to consideration of other Federal Rules of Civil Procedure (e.g., F. R. Civ. P. 55(b), 55(c) and 60(b) – none of which are applicable here.

Nonetheless, Defendants submit that the Court should indeed consider the pertinent *Poulis* factors, all which clearly demonstrate that the circumstances of the instant matter confirm that the Court's dismissal with prejudice was justified, and the Court should not reconsider or reverse its decision. As detailed in the procedural history above and the submissions outlined before the Court which were referred to and relied upon in rendering its decision, while perhaps not expressly discussed in its Order, the *Poulis* factors were clearly considered and satisfied.[3] Here, there is

---

[3] Much like in *Poulis*, there is little to reflect conduct on the part of the Plaintiffs themselves, aside perhaps, from failing to observe proceedings involving their own counsel, including their own counsel's representations to the Court that he no longer intended to represent them. As observed by both the Court (and counsel's own submission to the Court) many of the incidents involving Plaintiffs' counsel were public and filed "in nearly every jurisdiction in the country". Nonetheless, as observed by the Court in *Poulis*, "the Poulis' lack of responsibility for their counsel's dilatory conduct is not dispositive, because a client cannot always avoid the consequences of the acts or omissions of its counsel." *See Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) <u>citing</u> *Link v. Wabash Railroad*, 370 U.S. 626, 633, 82 S. Ct. 1386, 1390, 8 L. Ed. 2d 734 (1962).

clearly prejudice to Defendants reflected by the sheer history of this matter arising from three years of pleading practice where Plaintiffs submitted and Defendants have been forced to incur the costs of defense to successive Complaints consisting of: 1) rambling lengthy, verbose and incoherent prolix; and 2) the repeated use of generative artificial intelligence to create further confusion; leading to an expenditure of time and resources the Court even observed in its December 31, 2025 Order. Indeed, the record reflects Plaintiffs incorporated extensive and misleading AI generated content, ignoring objections by Defendants to same, and only offering any measure of correction after being ordered to do so in an unrelated matter.

There is a clear pattern of dilatoriness by the Plaintiffs in pursuit of their claims. Plaintiffs have filed five separate complaints over the course of three years, culminating in the C.Comp. dismissed by the Court, first without prejudice and then with prejudice, based upon Plaintiffs' latest failure to address deficiencies already identified by the Defendants and the Court in connection with prior iterations of the complaint and causes of action.

Further, the Court's Order identifying that failure to file an amended complaint within 30 days would result in a dismissal with prejudice was entered on December 31, 2025. This provided Plaintiffs until January 30, 2026, to file an amended pleading. According to the unreliable letter supporting the "letter-motion", Plaintiffs' counsel's medical procedure was on January 23, 2026. Plaintiffs' counsel

9

offers no explanation whatsoever for why he did not take any action between entry of the dismissal Order and the date of the procedure, for example, writing to the Court to advise of his upcoming procedure and requesting an extension of time. The surgery was performed by a cosmetic surgeon, requiring him to travel to California, suggesting it was, at best, a voluntary procedure where counsel had ample time to prepare and request any necessary extension.[4] Plaintiffs' failure to take any action prior to his procedure, despite having three weeks to send even a simple letter to the Court advising of his procedure and requesting an extension, demonstrates that the conduct was in fact willful and in bad faith, and yet another example of a complete disregard for court rules, deadlines and orders.

Yet, perhaps what is most stark under *Poulis* is the consideration of whether counsel's conduct was willful or in bad faith. It is difficult to find otherwise here. Even ignoring the historical abuse of Artificial Intelligence by counsel and the record replete with erroneous submissions which Defendants were forced to respond (e.g. ECF 46 – which due to procedural deviations and abuse of AI, the Court noted it would disregard such filing in its December 31, 2025, Order), Plaintiffs' counsel, as

---

[4] Plaintiffs' counsel, Mr. Blackburn, has encountered similar timing and filing issues in connection with other matters, including a matter in which he is named as a defendant, *Joseph Cartagena v. Terrance Dixon, et al.*, S.D.N.Y. Case No. 1:25-cv-03552. Mr. Blackburn was recently deposed in that matter, in which he confirmed his travels to California. See Transcript of Deposition, at pgs. 65-66, attached as Exhibit "1" to the Certification of Joseph P. Fiteni, Esq.

10

an officer of the Court, represented he was withdrawing as counsel and transferring the matter to successor counsel. The Court relied upon those representations in its December 31, 2025, decision to dismiss the matter without prejudice and afford time for counsel to transfer the matter to successor counsel. Less than a month later, it was made clear those representations to the Court were simply false.

In terms of the fifth *Poulis* factor, alternative sanctions, it is similarly apparent that the Court's dismissal with prejudice is the only appropriate remedy. The dismissal of the Complaint with prejudice was hardly a first blush response by the Court. It was imposed as a last resort, following five (5) separate and terribly flawed attempts by Plaintiffs to assert causes of action, all of which lacked in substantive merit in the allegations that could be discerned from the confusing morass Plaintiffs filed each time with little to no regard for the Court, the Defendants, the Federal Rules of Civil Procedure or the law. In fact, there may be no better advocate for how the further continuation of proceedings in any fashion would be inappropriate then Plaintiffs' counsel himself. In submitting a Third-Amended Complaint (again, without regard to Court Rules and ignoring that same is actually at least the 5ᵗʰ iteration of this matter), Plaintiffs' counsel offers a laundry list of admissions of the vexatious conduct prior pleadings have visited upon the Court and Defendants by listing all the ways the latest Complaint is now "fixed". It is allegedly "significant shorter" weighing in at "85 pages and 550 paragraphs" and allegedly "removes AI-

11

generated and erroneous citations, corrects the internal inconsistencies and withdrawn claims identified by the Court, and addresses the categories of arguments raised in Defendants' May 2, 2025, motion." Yet, incredibly – a cursory examination reveals yet another exercise in vexatiousness designed to waste both the Court's time and that of the Defendants. First, incredibly, despite the Court ruling on the issue and being repeatedly advised that his former client has been deceased since 2023 – the newest Complaint again contains claims on behalf of the deceased John Berry. A suggestion is made by counsel these references would be removed from a "clean" copy. In filing the document before the Court, counsel once again represented that he was authorized, legally permitted and intended to proceed on claims by a deceased Plaintiff who this Court already indicated not only could not be represented, but also could not be substituted due to the failure to do so in a timely fashion. As to the representation that it is only "85 pages" same is a function solely of Plaintiffs utterly disregarding all typeset requirements for federal pleadings, submitting a single-spaced document that would be likely in excess of 170 pages had Plaintiffs again not ignored Court Rules. Plaintiffs represent it has been reduced to 550 paragraphs (it is actually 556), yet, Plaintiffs now use sub-paragraphs in place of numbered paragraphs, but their pleading remains just as confusing and convoluted. All of which ignores the fact that this pleading was submitted after Plaintiffs and their counsel ignored not only the procedural rules, but this Court's

12

own Order concerning the time frame in which any Amended Pleading was to be filed (anticipating same would be done by successor counsel).

Finally, under *Poulis*, in connection with considering the meritoriousness of the claim, the C.Comp. represents Plaintiffs' best and latest attempt to state a viable cause of action.  Earlier submissions were far worse and over the course of three (3) years the Plaintiffs have only placed before this Court even worse versions of their allegations. The Court correctly characterized the C.Comp. in its December 31, 2025 Order: "overtly prolix and lengthy, unclear" and a document that "fails to provide notice to Defendants of the claims against it; and fails to provide comprehensible legal allegations." (ECF 60). The Court observed it was unclear from the C.Comp. what law applies. Id. It is a document that frequently contradicts itself. Id. Timelines offered for Plaintiffs allegations are unclear. Id. It is contradicting in the damages alleged. Id. It is unnecessarily repetitive. Id. It reasserts claims Plaintiffs voluntarily withdrew previously, and as the Court observed, it is "replete with citations to irrelevant, and sometimes fabricated, case law. Id.  The Court ultimately concluded, Plaintiffs most recent attempt to state a cause of action so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." See Id.

Notably, this is hardly Plaintiffs' first bite at the apple – there is no more apple to bite. The C.Comp. represented Plaintiffs' 5th attempt to state a cause of action, and

13

once again, they failed. Accordingly, consistent with <u>Poulis</u>, the Court has only been presented with allegations that fail to establish a valid cause of action. Such allegations cannot be regarded as "meritorious" under any reasonable interpretation.

Finally, Plaintiffs' counsel attempts to pass blame upon Defendants' counsel, contending that he contacted Defendants' counsel prior to the deadline but did not receive a response. Plaintiffs' position is absurd. First, the request for an extension was sent to Defendants' counsel on January 29, 2026 - a mere <u>one</u> day before the deadline. Moreover, it undermines the representation by Plaintiffs' counsel that he was "physically unable" to work as a result of his medical "procedure". If he was capable of sending an email to counsel, he was just as capable of sending a letter to the Court. <u>See</u> Exhibit "2" to Fiteni Cert. Second, Defendants' response to Plaintiffs' counsel's email noted that Defendants' counsel would confer with their client, but "may not have a response for you before the return date and deadline at issue given the last-minute request." Given this position, upon receipt, Plaintiffs' counsel was free to immediately write to the Court to seek the extension sought – but did not.

Most notably, in another pending matter in the Superior Court of New Jersey, Plaintiffs' counsel represents a client who has filed claims against certain of the Defendants here (*Osso v. Health Lynks, et al.*), and counsel also requested consent to an adjournment of a pending motion to allow him time to file opposition. <u>Id.</u> However, in that matter, Plaintiffs' counsel did actually file an adjournment request

14

with the Court (see Exhibit "3" to Fiteni Cert.) – unequivocally confirming Plaintiffs' counsel was more than capable of submitting a letter to this Court.[5]

There is no doubt that dismissal with prejudice is a significant sanction. Yet, the Court did not do this before giving Plaintiffs and their counsel every chance to assert a viable claim. In three years of litigation, Plaintiffs repeatedly violated court rules, misused artificial intelligence, and made serious misrepresentations to the Court. On January 30, 2026, they ignored a final Court Order offering one last chance to amend their claim, and failed to file the requisite pleading. The Court rightly closed the case, and the record leading to that decision easily justifies same.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' "Letter-Motion" for Reconsideration should be denied in its entirety.

---

[5] A review of publicly available filings at the District Court level confirms that in addition to the filing in *Osso*, Plaintiffs' counsel was working throughout the period in question, i.e., January 23, 2026 (the date of his alleged first medical procedure), through at least January 30, 2026 (the date on which any amended pleading was required to be filed). On January 27, 2026, Mr. Blackburn filed a 29-page Memorandum of Law on behalf of plaintiff in *Emma Bengasbia v. BlackRock Inc., et al.*, S.D.N.Y. Case. No. 1:25-cv-00549. See Exhibit "4" to Fiteni Cert. On January 29, 2026, Mr. Blackburn appeared on behalf of Plaintiff for a teleconference before Magistrate Judge Sarah L. Cave in *Melvin Moore p/k/a 4Rest v. Chloe Bailey, et al.*, S.D.N.Y. Case No. 1:25-cv-01472. See Exhibit "5" to Fiteni Cert.

15

Dated: April 6, 2026

Respectfully submitted,

**DONNELLY KELLY BLACKWELL & GALLIGAN, LLC**
Attorneys for Defendants

*/s/ Jason A. Meisner*

JASON A. MEISNER

*/s/ Joseph P. Fiteni*

JOSEPH P. FITENI

16